**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roy Grant MILLER,
Defendant-Appellant.**

No. 78–5336.

United States Court of Appeals,
Fifth Circuit.

Aug. 8, 1979.

Nathan G. Graham, Tulsa, Okl., for defendant-appellant.

H. M. Ray, U. S. Atty., Alfred E. Moreton, III, Thomas W. Dawson, Asst. U. S. Atty., Oxford, Miss., for plaintiff-appellee.

Before BROWN, Chief Judge, COLEMAN and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Roy G. Miller appeals his convictions after a jury trial on four counts of transporting or causing to be transported in interstate commerce securities of a value of more than $5,000 knowing them to have been taken by fraud, in violation of 18 U.S.C. §§ 2, 2314 (1976). In 1972 at New Prue, Oklahoma, Miller formed the Arkansas Valley Environmental and Utility Authority (AVEUA), an industrial authority empowered under Oklahoma law to issue industrial revenue bonds. He also formed three companies for the purpose of developing a project to be financed by AVEUA. AVEUA thereafter issued $1.5 million in bonds to one of the three Miller companies in return for an undertaking by the company to construct a water and sewage system to serve both the city of New Prue and an industrial park that Miller proposed to develop. Miller had the bonds discounted to M. E. Ratliff & Co. in Southhaven, Mississippi, for $1.2 million in cashier's checks and checks drawn on the account of M. E. Ratliff & Co.[1] Miller and his companies spent all of this money within eight months. According to the Government's proof, less than $400,000 was spent on the AVEUA project. Some $480,000 was clearly not used on the project, and another $286,000 was expended for purposes not clearly attributable to AVEUA. Two years after the bonds were issued, they were in default.

On appeal, Miller does not challenge the sufficiency of the evidence to convict him. He raises only two points of error. He first contends that the Government's expert accounting witness was improperly permitted to express an opinion on the ultimate fact issue of whether the securities were obtained by fraud. On redirect examination, the expert was asked:

---

1. These checks, which were transported by Miller from Mississippi to Oklahoma or sent to him in Oklahoma, are the "securities" charged in the indictment to have been obtained by fraud. Checks are defined as securities in 18 U.S.C. § 2311 (1976).

MR. DAWSON [Government attorney]:

Q. Mr. Brooks, after listening to all of the testimony in this case and examining those documents in this case, hearing both the witnesses from Oklahoma, the witnesses that sponsored the bank records and the other witnesses such as Mr. Frazer, Nimrod Frazer the bond dealer, and based on your summary and analysis of all of these records as you have testified, do you have an opinion from an accountant's standpoint as to whether or not the Arkansas Valley bond money was obtained by fraud?

MR. GRAHAM [Defense attorney]:

If your Honor please, we are going to object to that question as usurping the province of the jury.

THE COURT:

I believe under the new rules of Federal evidence the ultimate question may be put to the expert even though it is for the jury to decide. Overruled.

MR. DAWSON:

The Court has ruled. You may answer.

A. Yes.

Q. Would you tell us that opinion?

A. The accounting trail of the funds that were acquired for this Arkansas Valley Environmental Utility Authority were misapplied and not used for the purpose and that would be my basis.

Record, vol. 3, at 354–55.

■ Miller now concedes that the question posed to the witness was not improper. Rule 704 of the Federal Rules of Evidence clearly permits a witness to express an opinion on an ultimate issue to be decided by the jury. Moreover, the foundation for the Government's question on redirect was laid during Miller's cross-examination of the expert. On cross-examination, Miller pursued the tactic of isolating particular instances of Miller's conduct and eliciting from the expert the admission that such conduct, standing alone, was not a crime. The Government was entitled to rebut this myopic view of Miller's involvement by asking the expert for his opinion based on *all* the evidence.

■ Miller's present complaint is that the expert's opinion was based, at least in part, on charts that reflected assumptions not supported by the evidence. The Government had prepared and introduced into evidence charts showing the disposition of the funds obtained through the sale of the bonds. The charts listed disbursements from Miller's bank accounts in three categories: for the AVEUA project, not for the project, and for uses not clearly attributable to the project. Miller objects that in preparing these charts the Government erroneously assumed that the only purpose for issuing the bonds was to build a water and sewer system. Actually, Miller argues, the money was also to be used to develop the industrial park, so money spent to buy land and promote the park should have been listed as disbursed for the project rather than in one of the other two categories. Because the charts were defective, he urges, the expert's opinion based on them should have been excluded.

The short answer to this argument is that Miller did not object at trial to the reception into evidence of the charts he now contends are inaccurate. His later objection, when the expert testified, was based on the old rule against opinions on ultimate issues. Recognizing that the Federal Rules of Evidence have rejected that prohibition, he now seeks to support his objection by attacking the charts. This tactic must fail. Objections to the admission of evidence cannot be raised for the first time on appeal in the absence of plain error, e. g., *United States v. Dawson*, 576 F.2d 656, 658 (5th Cir. 1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1043, 59 L.Ed.2d 88 (1979), and any error in admitting the charts into evidence was far from plain.

■ Miller's second and final claim on appeal is that the jury was irretrievably prejudiced against him when the prosecutor, on cross-examination, asked Miller about the contents of a privileged letter to him from his attorney. The question recited a paragraph of a letter that Miller had delivered to the Government during reciprocal pre-trial discovery but as to which he

had reserved the right to assert at trial the attorney-client privilege. The letter advised Miller that his handling of the AVEUA funds might expose him to prosecution for a felony if discovered. Miller's attorney objected to the question, and, after an extended conference in the judge's chambers, the letter was ruled privileged and the jury instructed to disregard the question. Miller contends that notwithstanding the judge's cautionary instruction, the word "felony" was unfairly implanted in the jury's mind and, for this reason, he should receive a new trial.

Assuming that the posing of this one question was improper, we do not believe that on this record, with an adequate curative jury instruction, it was of such prejudice as to warrant reversal.[2] *See United States v. Rodriguez*, 573 F.2d 330, 333 (5th Cir. 1978). Such an assumption is not called for, however, because there was nothing improper about the question. The letter itself was highly relevant,[3] even though it was dated some two years after the original sale of the bonds and the crime of which it warned was not the one for which Miller was tried.[4] The relevancy of the letter became readily apparent by the close of Miller's direct examination when he related that he had been advised by counsel that he should not commingle AVEUA funds with his companies' revenues and that "he had better get that straightened out." On cross-examination, the prosecutor probed further:

> Q. Isn't it a fact that as early as March of 1973, your own attorney, Mr. Heskett, told you after the SEC had come in there while you were on the trip to New Zealand, that if discovered, what you had done with respect to the money was a felony?
>
> A. Mr. Heskett told me that I was co-mingling funds and I do not ever remember the word felony, but, I better get it straightened up. I took it to Haskins and whatever the name of the firm was in Kansas City to begin that process.
>
> Q. He never told you it was a felony?
>
> A. No, Sir.
>
> Q. Isn't it a fact that he wrote you a letter on March 11, 1974, the second paragraph saying during the time following the above conversations concerning the Arkansas Valley-Milanson Development Company and so forth we have sought to justify the manner in which said trust funds are being used, but, frankly we are unable to do same. In fact, our research has led us to the opinion that the use of said trust funds unabated may bring about a conviction for a felony if discovered?

Record, vol. 4, at 538–39. At this point, Miller's counsel interposed the privilege objection. The trial judge, faced with the difficult questions whether the attorney-client privilege had survived the publication of the letter in pretrial discovery and whether, if the privilege survived, it had been waived by Miller on direct or, later, on cross when he failed to object to and promptly answered the two questions about counsel's advice, sustained the objection and instructed the jury to disregard the question. The jury heard nothing further about the letter or its contents.

We obviously cannot condone a practice that enables a defendant or any witness, after giving the jury his version of a privileged communication, to prevent the cross-examiner from utilizing the communication itself to get at the truth. Miller's sole defense in this case was that he acted in "good faith." Record, vol. 3, at 361. He volunteered that his lawyer had warned him about commingling the AVEUA funds with his own and had instructed him to take

---

**2.** That Miller himself considered the incident not unduly prejudicial at the time is shown by his failure to move for a mistrial.

**3.** Miller's counsel, in arguing his objection to the prosecutor's question, conceded that the letter was probative of the defendant's intent. Record, vol. 4, at 544.

**4.** The felony referred to in the letter was either a federal securities law violation or a state fiduciary crime, not a violation of 18 U.S.C. § 2314, the charge in this case.

remedial action; he claimed that he followed that advice. The prosecutor, on cross, sought to make two points. First, Miller's counsel did more than issue a simple warning; he told Miller that "the use of the trust funds unabated may bring about a conviction for a felony if discovered." Second, Miller continued to misappropriate the AVEUA funds *after* counsel's warning.[5] We are unable to perceive any legitimate policy consideration that would necessitate the foreclosure of this line of cross-examination after the defendant had attempted to convince the jury that his actions were in good faith reliance on counsel's advice. The prosecutor was entitled to pursue the point.

The judgment of the district court is AFFIRMED.

---

**5.** Notwithstanding his lawyer's advice, Miller continued to abuse the trust of the bondholders. He pledged AVEUA land as collateral for a personal loan on which he later defaulted and surrendered the collateral. After the AVEUA bonds went into default, he transferred all his interest and liability in the project to one of his employees, a dirt mover with less than a high school education.