**UNITED STATES, Appellant,**

v.

**Richard A. MASON, Appellee.**

**No. 81–850.**

District of Columbia Court of Appeals.

Argued June 23, 1982.

Decided Sept. 9, 1982.

Lisa J. Stark, Asst. U. S. Atty., Washington, D. C., with whom Stanley S. Harris, U. S. Atty., Charles F. C. Ruff, U. S. Atty. at the time the initial brief was filed, John A. Terry, Asst. U. S. Atty. at the time the case was argued, and Gayle D. Hargrove, Asst. U. S. Atty., Washington, D. C., were on the briefs, for appellant.

---

Steven M. Buckman, Washington, D. C., appointed by this court, for appellee.

Before KELLY and KERN, Associate Judges, and PAIR, Associate Judge, Retired.

PER CURIAM:

The government appeals from the trial court's suppression of narcotics seized by a police officer in response to a radio run. The officer testified at the suppression hearing that the police dispatcher had issued a call for a man standing at the corner of 13th and W Streets, N. W., dressed in a specific manner carrying a black tote bag containing a gun. (Record at 13.) The officer further testified that within two minutes of his receipt of the radio run for a man with a gun (Record at 12, 13), he observed appellee about 20 yards from the corner of 13th and W dressed substantially as the radio run had described. Appellee was also carrying a tote bag. (Record at 14.)

The officer confronted appellee with the information he had just received and appellee denied that he had a gun. (Record at 16.) Appellee removed the bag from his shoulder and put it on the ground at his feet. (Record at 17–18.) The officer picked up the bag and opened it to find 164 bags of substance that turned out to be marijuana. (Record at 18.) The officer then arrested appellee and searched his person incident to that arrest. Some additional marijuana was in his coat pocket but no gun was discovered. (Record at 20.)

The trial court ruled that since there was no way to measure the reliability of the person who called the police because the caller had refused to identify himself (Record at 49), the officer lacked probable cause to arrest appellee. Therefore, the seizure of the bag could not be lawful as the product of a search incident to a valid arrest.

The government "does not challenge the trial court's ruling regarding probable cause." (Appellant's Brief at 2 n.3.)

The court went on to conclude that there was a basis under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), for the officer to stop appellee in light of the radio run for a man with a gun. (Record at 41.) The court further concluded that "there was a basis for grabbing the bag because . . . based on the information he [the officer] had . . . there might be a gun in it." (Record at 51.) However, the court held that once the officer "grabbed the bag he was out of danger" (Record at 41), and the officer was not then authorized to open and search the bag. (Record at 51.) The court repeated in its oral ruling at the suppression hearing that the officer did not "have to go through the bag to protect himself," and ordered the marijuana suppressed. (Record at 52.)

I

The propriety of investigatory police action based on information received from an anonymous source is well settled in this jurisdiction. *United States v. Walker,* D.C. App., 294 A.2d 376 (1972), *appeal dismissed,* 304 A.2d 290, *cert. denied,* 414 U.S. 1007, 94 S.Ct. 368, 38 L.Ed.2d 245 (1973); *see also United States v. White,* 208 U.S.App.D.C. 289, 648 F.2d 29 (1981).[1] We do not, therefore, understand that portion of the trial court's ruling which held that Officer Watts was entitled to conduct a *Terry* stop to be in dispute.[2]

The nub of this case is the constitutional propriety of the police officer's seizure and opening of appellee's bag contemporaneous with a legitimate *Terry* stop. The trial court held that all of Officer Watts' actions prior to opening the bag were within the proper scope of the intrusion permitted under *Terry.* However, the court further con-

---

1. We note that the vast majority of other state and federal jurisdictions hold the same way. *See State v. Hetland,* 366 So.2d 831, 838 (Fla. App.1979) (cases cited therein); *United States v. White, supra.*

2. We advert no opinion as to the merit of appellee's argument on appeal that he was in fact under arrest with the approach of the police officers. This matter is not properly before us. *But see generally United States v. White, supra* at 293–95, 648 F.2d at 33–35.

cluded that the on-the-scene search of the bag was impermissible. We proceed therefore to an analysis of the scope of the intrusion permitted under *Terry* and of the true purpose underlying this exception to the warrant requirement.[3]

In *Terry*, the Supreme Court established that a protective frisk is justified, without probable cause to arrest, when "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Lewis v. United States*, D.C.App., 399 A.2d 559, 561 (1979), *quoting Terry, supra* 392 U.S. at 27, 88 S.Ct. at 1883; *see also United States v. White, supra* at 293, 648 F.2d at 33. An anonymous tip concerning a man in possession of a gun, where all innocent details have been quickly corroborated on the scene, may furnish such a belief. *Walker v. United States, supra; United States v. White, supra.*[4]

The concomitant rule for the scope of a weapons frisk pursuant to a *Terry* stop was articulated in *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (footnote omitted): "So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope" to protect the officers and others present. *United States v. McClinnhan*, 212 U.S.App.D.C. 368, 660 F.2d 500 (1981). This theme, the protection of the officer making the stop and of innocent bystanders, is of paramount importance. It has been called the rationale of *Terry*. *United States v. Rainone*, 586 F.2d 1132, 1135 (7th Cir. 1978); *see also Sibron v. New York*, 392 U.S. 40, 65, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968); *Johnson v. United States*, D.C.App., 350 A.2d 738, 740–41 (1976); *United States v. Coates*, 161 U.S.App.D.C. 334, 339, 495 F.2d 160, 165 (1974); *Lewis v. United States, supra* at 562.

The unique circumstances under which each case arises in this area of the law makes the term "binding precedent" a misnomer. *See generally Henighan v. United States*, D.C.App., 433 A.2d 1059, 1061 (1981). We are, however, directed by counsel's briefs and our own research to the recent case of *United States v. McClinnhan, supra.*[5]

## II

In *McClinnhan*, two police officers on patrol received a radio run for a man described as wearing jeans, a black coat, a black hat, and who was reportedly carrying a sawed-off shotgun concealed in a black briefcase. Proceeding quickly to the area,[6] the officers observed a man matching the description standing less than one foot from a black briefcase. The officers stopped their car near the man who was later identified as appellant McClinnhan. One officer approached, identified himself and conducted a weapons frisk. The other officer simultaneously seized the briefcase and opened it to reveal a shotgun. *Id.* at 369, 660 F.2d at 501. The appeals court for the D. C. Circuit affirmed the trial court's denial of the motion to suppress and allowed the shotgun to be introduced into evidence. *Id.*

The warrantless search of McClinnhan's briefcase was upheld under the exigency of the "immediate protection of the investigating officers" and the "broader danger to the community" of permitting one assertedly in possession of a shotgun to proceed unhindered. *Id.* at 371, 660 F.2d at 503. We note the care with which the exigency

---

**3.** "Searches conducted outside the judicial process without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnote omitted); *see also United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981).

**4.** *See* note 1 *supra.*

**5.** We recognize that this case is not binding upon us. It is however entitled to great weight. *M. A. P. v. Ryan*, D.C.App., 285 A.2d 310, 312 (1971).

**6.** The officers testified that it was less than one minute from receipt of the radio run to arrival on the scene.

was deemed by the court to mirror the fundamental purpose of a *Terry* weapons frisk. *See Adams v. Williams, supra.* The court asserted that in approving the search of the briefcase incident to a *Terry* frisk it was not violating settled constitutional principles or breaking entirely new ground. *See United States v. Wilkerson,* 194 U.S. App.D.C. 393, 598 F.2d 621 (1978) (permitting warrantless search of coat, pursuant to authorized *Terry* stop, where coat was lying on front seat of car from which appellants had alighted, under which coat was found a gun).

It is worth repeating the circuit court's analysis of the options available to the police officers in *Wilkerson* and *McClinnhan:*

Before holding the warrantless search of the coat legitimate, the *Wilkerson* court examined the alternatives open to the police in that situation and concluded that "each alternative course would have exposed [the officers] to danger which was eliminated when [one of them] reached into the front seat and patted the coat left lying there." [Citation omitted.] We think that general discussions of personal privacy and public safety are not as useful in resolving close Fourth Amendment questions as is following the example of the *Wilkerson* court by focusing upon the options available to the investigating officer confronted with a reasonable apprehension of danger.

We think that Officers Bryant and Bement had no suitable or safe alternative to a warrantless search of McClinnhan's briefcase. They could do nothing at all, a course whose risks are obvious. They could have asked McClinnhan to open his briefcase, but had he refused, they would have been no better off than before.

Merely separating McClinnhan from his briefcase as the officers did just before the search, would obviate the danger only for the length of the stop; at some point they would be compelled to return the briefcase to appellant and thus place themselves in the danger they sought to avoid. [*McClinnhan, supra* at 372, 660 F.2d at 504.]

We conclude here that Officer Watts had "no suitable or safe alternative" course of action, within the meaning of *McClinnhan,* but that which he took in securing and opening appellee's bag. We therefore hold that the court erred in concluding the seizure and search of the bag was improper and that the marijuana discovered in appellee's bag must be suppressed. Accordingly, we conclude that such contraband may be introduced in evidence at trial.[7]

Appellee points to certain discrepancies[8] between the radio run description as received by the officer and the testimony by Officer Watts as to appellee's appearance when he first observed him. Since these discrepancies must be viewed in the context of a *Terry* stop rather than a full-blown arrest, we are not persuaded that these discrepancies make *McClinnhan* inapposite.[9] Secondly, appellee's argument that the officer could have held the bag pending acquisition of a search warrant does not constitute in our view a suitable alternative to what the officer in fact did here. As the federal appeals court stated, it is indeed a "doubtful proposition that a seizure of one's personal belongings for an indefinite period of time without a warrant is a lesser intrusion upon personal privacy than is a warrantless inspection." *McClinnhan, supra* at 373–74, 660 F.2d at 504–05; *see Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d

7. It is of no constitutional significance that marijuana and not a gun was found within the bag.

8. We think appellee's attention in his brief to the purported discrepancies is misplaced. Regardless, the discrepancies are not fundamental. The fact that the initial radio run spoke of three men, not one, and that the tote bag was

blue and not black, does not take away from the altogether accurate description relayed by the radio run which was corroborated within two minutes in all other pertinent details.

9. *See In re J. G. J.,* D.C.App., 388 A.2d 472, 474 (1978); *McMillan v. United States,* D.C.App., 373 A.2d 912 (1977); *Irby v. United States,* D.C.App., 342 A.2d 33 (1975).

419 (1970).[10] Finally, we reject any assertion that it was improper under the particular circumstances for Officer Watts to seize the bag prior to conducting a pat down of appellee.[11] "[T]he tactical choice by the police between apparent alternative courses of action cannot be overturned by detached judicial deliberation as long as the course of action is in itself reasonable." *Bailey v. United States,* D.C.App., 279 A.2d 508, 510 (1971).

The conclusion we reach in the instant case is entirely consistent with our decisions which have authorized more extensive *Terry* searches in specific and limited circumstances. *See, e.g., District of Columbia v. M. M.,* D.C.App., 407 A.2d 698, 702 (1979) (approving search of paper bag on appellee's person; "we are unwilling to restrict an officer making a *Terry* frisk from looking into a bag of a suspect after he has felt it, but before he places that person in his vehicle for transport"); *Lewis v. United States, supra* (allowing frisk of defendant after discovery of gun wrapped in sweater of acquaintance); *Johnson v. United States,* D.C.App., 367 A.2d 1316 (1977) (approving opening of paper bag found in back seat of car); *Johnson v. United States, supra,* 350 A.2d 738 (approving search of contents of grocery bag at foot of appellant in car stopped for traffic offenses); *United States v. Thomas,* D.C.App., 314 A.2d 464 (1974) (approving search of front seat of car after appellants had been ordered out of vehicle); *compare People v. Long,* 413 Mich. 461, 320 N.W.2d 866 (1982).[12] In sum, we are not persuaded that the limited intrusion we approve here is any more intrusive than the searches approved by this court in its earlier decisions.

We are aware that, in countenancing a warrantless search incident to an investigative stop, we are near the limits of the exigent circumstances exception. But we think we are well within it .... We are not upholding today a warrantless search for anything other than an immediately-accessible dangerous weapon .... We are not considering a warrantless search based upon an anonymous tip that is not corroborated in some manner or which appellant argues was fabricated. [*McClinnhan, supra* at 373, 660 F.2d at 505.]

*Reversed.*

---

10. In any event, it would be highly speculative to presume that on these facts a search warrant could be obtained. *See United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

11. We have noted that the officer had received information that the gun was in the bag, not on appellee's person.

12. We note that federal case law aside from *McClinnhan* is equally supportive of our position. *See United States v. Rainone, supra* (approving automobile search pursuant to *Terry* stop); *United States v. Jeffers,* 520 F.2d 1256 (7th Cir. 1975) (approving search of purse); *United States v. Vigo,* 487 F.2d 295 (2d Cir. 1973) (approving search of female companion's purse); *United States v. Green,* 151 U.S.App. D.C. 35, 465 F.2d 620 (1972) (approving search under front seat of automobile); *United States v. Berryhill,* 445 F.2d 1189 (9th Cir. 1971) (approving search of defendant's wife's handbag).