**UNITED STATES, Appellant,**

v.

**Morris JOHNSON, Appellee.**

No. 86–1424.

District of Columbia Court of Appeals.

Argued June 25, 1987.

Decided April 15, 1988.

Charles M. Steele, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty. at the time the brief was filed, and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellant.

Howard F. Bramson, Washington, D.C., for appellee.

Before MACK, ROGERS and STEADMAN, Associate Judges.

ROGERS, Associate Judge:

Pursuant to D.C. Code § 23–104(a)(1) (1981) the United States appeals from the grant of a motion to suppress physical evidence and statements. It contends that since an anonymous tip justified an investigative stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police had a right to search containers which might hold weapons, and that the statements were not obtained during custodial interrogation in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We agree that the physical evidence should not have been suppressed but remand for findings of fact on whether the statements occurred during custodial interrogation.

I.

Appellee Johnson was charged with carrying a pistol without a license and possession of an unregistered firearm, D.C. Code §§ 22–3204, 6–2311(a). At the suppression hearing Detective Israel testified that on March 22, 1986, he responded around 10:00 a.m. to a police radio run that a man sitting inside a Volkswagen at the corner of 23rd and Savannah Streets, S.E., was selling handguns or weapons. The information came from an anonymous phone call to the Communications Division of the Metropolitan Police Department. According to Officer Jeffrey Blevins, who arrived on the scene shortly after Detective Israel, the broadcast was for "a subject trying to sell a gun out of an orange Volkswagen that was parked in the area of 23rd and Savannah Street."

Detective Israel reached the corner of 23rd and Savannah Streets within fifteen seconds of receiving the radio run and saw two men sitting in the front seat of an orange Volkswagen; no other cars were

parked nearby. The Volkswagen was parked fifty feet or less from the corner, and appellee was seated in the passenger seat. The detective parked directly behind the Volkswagen, activated his "red light" to identify himself as a police officer, and, after giving the dispatcher the license plate number and a description of the Volkswagen, approached the driver's side of the car. He identified himself as a police officer, and to further ensure his safety, he told the two men to put their hands in plain sight. The detective kept his eyes on their hands, and did not see anything else in the car; from his position behind the driver he did not have a full view of the front of the car. Less than a minute later, as two other officers arrived in a marked police car, appellee got out of the Volkswagen. The detective frisked the man in the driver's seat, and upon finding no weapon, took him to the rear of the car, where appellee and another officer were standing. The third officer looked into the open front door on the passenger side of the Volkswagen and said that he had found a handgun. The detective then walked to the passenger side of the Volkswagen, looked inside, and saw a gun lying on some clothes which were inside a fully open gym bag on the passenger seat.

In response to the detective's questions, both men denied that they owned the bag or the gun. The detective also asked who owned the Volkswagen and what they were doing in the car; they denied ownership of the car and said that they were just talking. The detective did not ask any other questions, and did not hear the men make any other statements. Appellee was then formally arrested.[1]

The trial judge granted appellee's motion to suppress on the ground that the police lacked the "articulable suspicion" required to justify a *Terry* stop, and hence did not have the right to approach the car, search the passengers and containers in the car, or question the passengers. The judge focused on the informant's refusal to identify himself in concluding that the mere presence of a vehicle matching the informant's description was, without further indicia of criminal activity, insufficient corroboration of the tip.

II.

In *Terry, supra,* the Supreme Court set out "a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." 392 U.S. at 27, 88 S.Ct. at 1883. Such searches must be based on "specific and articulable facts" which would lead a reasonable police officer at the moment of the search to conclude that the action taken was appropriate. *Id.* at 21–22, 88 S.Ct. at 1880. Accordingly, we must decide whether the informant's tip justified a *Terry* stop or was "completely lacking in indicia of reliability, [and] would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." *Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972).[2] We hold that Detective Israel had articulable suspicion for making an investigatory *Terry* stop.

Anonymous tips, in the absence of sufficient corroboration, present the prospect of governmental incursions into people's lives which would greatly expand the limited *Terry* exception to the probable cause requirement of the fourth amendment. To avoid such abuse, each case must be carefully evaluated on its facts. Prompt police investigation of tips involving guns is often included in the equation of determining the

---

1. Officer Blevins also testified as a defense witness that, according to the report he prepared concerning the arrest, appellee did not make any statements to him (Blevins) regarding the gun, and the gun was "sitting on the passenger seat in plain view."

2. In reviewing the trial court's determination, the appellate court's role is to ensure that the trial court had a substantial basis for concluding articulable suspicion existed. *See Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (discussing probable cause).

reasonableness of police conduct. *See, e.g., United States v. McClinnhan,* 212 U.S. App.D.C. 368, 660 F.2d 500 (1981); *cf. Derrington v. United States,* 488 A.2d 1314 (D.C.1985) (exigent circumstances). We conclude the reasonableness of Detective Israel's response was demonstrated.[3]

The tip in the instant case provided detailed information about the precise location where the suspect could be found and suggested an on-going crime involving the sale of a gun or guns. A police officer could reasonably interpret the tip as suggesting ongoing gun trafficking between a seller and a buyer inside of the Volkswagen. The absence of a visible gun prior to the *Terry* stop or other indication of possible criminality directly observed by Detective Israel is not dispositive of whether corroboration of the physically restrictive setting of the alleged criminal activity and the presence of two people in the front seats within seconds after receipt of the radio run provided articulable suspicion for making a *Terry* stop.

In view of the virtually immediate corroboration of all the innocent circumstances, the detective did not have to wait until he saw a gun to conclude that it was reasonable for him to investigate further. Because the suspects were in a car, the detective could reasonably assume that from his vantage point as he approached the Volkswagen from the rear, he would be unable to observe a sale taking place in the front of the car or to overhear any conversations. Furtive action or other suspicious movement by either of the men in the Volkswagen also was unlikely to fall within the detective's line of vision. The potential mobility of the car, moreover, would have suggested to a reasonable police officer that closer observation of the two men or delayed investigation risked the recovery of any gun. *See Chambers v. Maroney,* 399 U.S. 42, 51–52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 158–59, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925). Consequently, once Detective Israel verified that the cir-

cumstances were fully consistent with the tip, he reasonably could conclude that there was little, if anything, to gain and more to lose by a period of observation and that it was important to determine promptly if the suspect had a gun.

In *Terry,* the Supreme Court held:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own ... safety, he is entitled for the protection of himself ... to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

392 U.S. at 30, 88 S.Ct. at 1884–85. Thus, the officer must have grounds for concluding that criminal activity may be afoot and only then may conduct a protective search. *Id.* at 20, 88 S.Ct. at 1879. This two-pronged test is readily adaptable to a situation involving an anonymous tip concerning a gun sale by a man inside of an automobile. As in the instant case, the tip itself provided the direct observation of unusual conduct and suggested the dangerousness of the situation. *Cf. McClinnhan, supra,* 212 U.S.App.D.C. at 373, 660 F.2d at 505. Therefore, upon corroborating so much of the tip as was possible under the circumstances, Detective Israel could justifiably rely on his experience in concluding that he had observed, through the tipper's observations, unusual conduct that indicated that criminal activity "may be afoot." Only after verifying all aspects of the tip except an actual sale of a gun did he confront the two men in the Volkswagen. He then identified himself, took reasonable steps to avoid danger to himself in the event either

---

**3.** Appellee's reliance on *United States v. Walker,* 115 Daily Wash.L.Rptr. 1433 (D.D.C. July 13, 1987) is misplaced. The question before the District Court concerned probable cause rather than articulable suspicion, and the tip did not involve a gun.

man had a gun, and asked questions to determine whether they were engaged in criminal activity. To this extent the detective's action was comparable to that of the officer in *Terry, supra,* 392 U.S. at 6–7, 88 S.Ct. at 1872.

In *Terry,* the police officer observed the innocent circumstances of two men walking back and forth on the street in front of a store until the officer was satisfied that it was reasonable to conclude that the men were "casing a job, a stick up." At that point further observation would have been useless since the officer could not overhear the men's conversation and was not required to continue his observation until he saw an activity which could only be consistent with criminal conduct. It was not inconceivable that the men were merely waiting for a friend to get off from work at the store. Indeed, the two men were leaving the area when the officer confronted them. Nevertheless, the Court did not interpret the fourth amendment to require that the officer defer confronting the men where, based on his experience as a police officer, the officer reasonably could conclude that the men were preparing to commit a robbery. Although the officer's direct observations were significant in providing articulable suspicion that "casing" was occurring, the Court did not suggest other means of conveying information to a police officer would be unacceptable. Nor did the Court place limits on the amount of time that was required for constitutionally adequate police investigation, recognizing the infinite variety of police confrontations with citizens that might occur. Rather the Court focused on the officer's factual basis for acting in light of his experience and on the nature and quality of the intrusion on individual rights. *Id.* at 24–27, 88 S.Ct. at 1881–83.

A review of our decisions on anonymous tips is useful in gauging whether the facts in the instant case meet the constitutional threshold. We are satisfied upon so doing that the anonymous tip in the instant case provided no less information than such tips in other cases in which this court has upheld *Terry* stops.

In *United States v. Mason,* 450 A.2d 464, 465 (D.C.1982), a radio run based on an anonymous tip was for a man standing at a specified corner, dressed in a certain manner and carrying a black tote bag containing a gun. This court held that when the officer observed the subject less than two minutes later standing twenty yards from the corner, dressed in substantially the manner described and carrying a tote bag, the police officer was entitled to conduct a *Terry* stop. Police officers might reasonably believe they are in danger based on "[a]n anonymous tip concerning a man in possession of a gun, where all innocent details have been quickly corroborated on the scene." *Id.* at 466. Noting that the officer had no suitable or safe alternative to securing and opening the bag, the court also reversed the suppression of the bag and its contents.

The instant case is similar to *Mason:* in both cases the tip provided information concerning the location of a suspect with a gun. In one the suspect's clothing was described; in the other case the make and color of the car in which the suspect was sitting were described. The probative value of these descriptions is similar. Neither carries as much weight as fingerprints or other uniquely identifying characteristics, since people can exit cars and can discard or change articles of clothing. Still, the stop was upheld in *Mason* even though no additional action by the defendant was observed by the police officer until he had confronted the defendant with the information in the radio run. *Id.* at 465. Similarly, when Detective Israel arrived on the scene, in far less time than the officer in *Mason,* the information concerning the car was fully corroborated,[4] and the tip would only have fit someone inside of the car notwithstanding the absence of details about the

---

4. Appellee Johnson misstates the issue in an attempt to distinguish *Mason.* In his brief, he states erroneously that the tip was not of an ongoing crime, and that the car was not where the informant said it was. The issue is whether a reasonable police officer could have interpreted the tip as describing what he saw.

description of the seller's personal characteristics and clothes.

In *Lawson v. United States*, 360 A.2d 38 (D.C.1976), this court affirmed the denial of a motion to suppress where the police received an anonymous tip that a man with a grey beard wearing blue jeans and standing at a telephone booth on a certain street corner was carrying a pistol in his pocket. When the police arrived three minutes later, they saw a man fitting the description in the phone booth and no other people nearby. The gun was not visible until the police frisked defendant. The court held that the tip's "[r]eliability was established when the police just minutes later reached the street corner, and found that the scene corroborated the informant's report in all respects." *Id.* at 40. The court viewed the tip as being made by an eyewitness citizen-informer, *id.;* it did not contain a greater quantum of information than the tip in the instant case, where the information was corroborated in less time.[5] *Lawson* differs only to the extent that an officer testified that as he and his partner approached the defendant, the defendant made motions which looked "as though he was trying to hide something." *Id.* at 39. Although the defendant's response to the officers' approach was one factor relied upon by the court in determining that the investigatory stop was reasonable, the court held that the tip's reliability had been established before the furtive gesture was made. Reliability was established as soon as the police arrived on the scene and found that the innocent details of the tip were corroborated. *Id.* at 40.

In the instant case the trial judge ruled that the tip's reliability could not be sufficiently established for *Terry* purposes because it was anonymous, and hence the detective should have waited until he saw some plainly illegal conduct rather than relying on the corroboration of innocent details alone. Our decisions make clear, however, that anonymous tips may furnish the requisite articulable suspicion. *Mason, supra,* 450 A.2d at 466. A police officer may lawfully approach a described suspect once innocent details of an anonymous tip are promptly corroborated, and is not, under all circumstances, required to wait until something more indicative of illegal conduct occurs.

Nothing in the record before us suggests that the tip in the instant case was made other than by a citizen who had observed gun trafficking.[6] The possibility that the person giving information to the police is a disgruntled citizen or has a motive to falsify is insufficient to preclude a *Terry* investigation where the reliability of the anonymous report of an ongoing crime is enhanced by immediate verification of all its innocent details. *See, e.g., Groves, supra* note 5, 504 A.2d at 604; *Lawson, supra,* 360 A.2d at 40; *Galloway v. United States,* 326 A.2d 803, 805 (D.C.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975).

Since we hold the police had the requisite articulable suspicion under *Terry,* and no gun was found on either of the two men, the police could properly search the passenger compartment of the car for weapons, including containers of a size likely to contain a weapon. *Michigan v. Long,* 463 U.S.

---

**5.** While many other cases also involve informants, *Mason* and *Lawson* are factually closest to the instant case. *See Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (person known to police officer approached him in person and told him man sitting in nearby car had drugs and a gun); *Groves v. United States,* 504 A.2d 602 (D.C.1986) (tip reliable because informant called twice, identified himself, and was clearly observing the scene firsthand); *Allen v. United States,* 496 A.2d 1046 (D.C.1985) (anonymous tip sufficient to establish probable cause where caller was known to police, her previous calls had led to several drug seizures, and several details of the tip were corrobo-

rated); *United States v. Walker,* 294 A.2d 376 (D.C.1972) (man who refused to give his name told two police officers a man named Willie, who was dressed in a certain manner and had an artificial leg, was sitting on the porch of a house in a certain block and had a gun); *Murphy v. United States,* 293 A.2d 849 (D.C.1972) (anonymous tip that a man named Murphy, of a certain description and wearing certain clothing, had a gun, and was sitting at a particular booth in Good Guys restaurant).

**6.** Appellee concedes the tip was made by an anonymous unpaid informer.

1032, 1049, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983) (search of passenger compartment of car, limited to areas in which a weapon may be placed or hidden, is permissible if officer has articulable suspicion that suspect is armed and dangerous); *Johnson v. United States*, 350 A.2d 738 (D.C.1976); *United States v. Thomas*, 314 A.2d 464 (D.C.1974); *McClinnhan, supra*, 212 U.S.App.D.C. 368, 600 F.2d 500. The sole justification for such searches is to protect the police officers involved and not the collection and preservation of evidence. *Michigan v. Long, supra*, 463 U.S. at 1049 n. 14, 103 S.Ct. at 3481 n. 14. The trial judge did not make a finding on whether the gun was in plain view, but since the police could have searched the gym bag even if the gun was not in plain view, we do not need to remand for a finding on this issue, and hold that the tangible evidence should not have been suppressed.

Appellee also contended that his statements to the police should have been suppressed under *Miranda v. Arizona, supra*, 384 U.S. 436, 86 S.Ct. 1602. Because the trial judge found that the officers lacked articulable suspicion to make a *Terry* stop, he did not determine whether the police questioning constituted custodial interrogation. The record is silent on potentially significant circumstances, *see, e.g., Miley v. United States*, 477 A.2d 720, 722–23 (D.C. 1984). Accordingly, we remand the case to the trial judge to make findings on whether appellee was subjected to custodial interrogation. *See Staton v. United States*, 466 A.2d 1245, 1253 (D.C.1983).

*Affirmed in part, reversed in part, and remanded.*

MACK, Associate Judge, dissenting:

Today the majority justifies a *Terry*[1] stop on the basis of an anonymous tip that *alleged* criminal activity. It does so despite the fact that nothing connected with the receipt of that tip or observed by arresting officers thereafter gave that tip

any indicia of reliability so as to justify a forcible stop and seizure. In my view the trial court, in granting a motion to suppress, properly held that an illegal stop[2] made by officers tainted all subsequent evidence gathered by the police in their investigation.

### I.

I briefly recount the relevant facts which form the basis of my disagreement with the majority's holding.

At 10 o'clock on the morning in question, a detective in a police cruiser, and two uniformed police officers in a scout car, responded to a radio run based on information provided by an anonymous tipster who had refused to identify himself. The detective testified, for the government, that the broadcast stated that there was a man, sitting in an orange Volkswagen, selling handguns at 23rd and Savannah Streets, S.E. The detective arrived at the described location within fifteen seconds. There he saw a orange Volkswagen, with two black males sitting in the front seat. The detective parked directly behind the Volkswagen with his "red light" flashing, alighted, approached the Volkswagen on the driver's side, and identified himself as a police officer. He told the man in the driver's seat to place his hands on the steering wheel and the passenger (identified as appellee) to place his hands on the dashboard. The detective confirmed that he had seen no movements by the men in the car: "I saw individuals ... and I responded. I took immediate action before they had a chance to do anything else, like turn around and shoot at me." After the discovery of a gun in a bag found in the car, appellee was interrogated as to the ownership of the bag, car, and gun, and was formally arrested.

The detective further testified that when the scout car with its two uniformed officers parked behind his cruiser in less than

---

1. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. The assertion of authority by the police is what actually constitutes a stop for *Terry* purposes. *See* HALL, JOHN WESLEY, SEARCH AND SEIZURE § 10:19 at 332 (1982) (vehicle stops will usually involve some assertion of police authority (*i.e.,* use of sirens and lights).

a minute after his own arrival, appellee alighted from the Volkswagen and walked toward the back of the car where he was confronted by the two officers. [This version of events was somewhat in conflict with that given by one of the officers, called by the defense, who testified that when the scout car arrived on the scene the Volkswagen was not occupied but both "subjects" were standing outside.] In any event, the detective opened the Volkswagen door for the driver to alight, frisked him, and took him to the rear of the car where appellee stood with an officer. In the meantime, one of the officers approached the passenger side of the Volkswagen and saw a gym bag approximately one-foot by two or three-feet large on the seat where appellee had been sitting. The top zipper of the bag was open, and a gun rested on top of clothes packed therein.

On these facts the trial court granted appellee's motion to suppress physical evidence on the ground that the police lacked the reasonable articulable suspicion which is the basis for a lawful *Terry* stop.[3] The court held that the policeman did not have a right to stop the car, and because of the taint of an unlawful stop, they had no right to frisk the passengers, search the car, or question the passengers. I agree with the trial court that, under the guidelines enunciated in *Terry* and *Adams v. Williams*,[4] there was no reasonable suspicion to warrant the police action taken here.

## II.

My dissent is prompted by the fear that *Terry* has been applied too often without a proper focus upon its rationale. Today the majority carries that erosion one step further. It correctly articulates the appropriate standard of review: we must decide whether the informant's tip justified a *Terry* stop or was "completely lacking in indi-

cia of reliability, [and] would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." *Adams v. Williams, supra,* 407 U.S. at 147, 92 S.Ct. at 1924. Having recognized this, however, the majority strains factual circumstances (without, I may add, being in a posture to weigh credibility), to give reliability to a tip lacking reliability for Fourth Amendment purposes. It is reasonable to believe, says the majority, that because a described car was where it was reported to be by a faceless "informer," the men in the car were selling guns and were therefore armed and dangerous; the majority equates corroboration of innocent details with corroboration that criminal activity is afoot. The implications of this reasoning are disturbing.

At the outset, it might help to remind that *Terry* did not involve an anonymous tip. The narrowly defined, bedrock principle in *Terry* is that a police officer, who makes a *permissible* stop based upon a reasonable articulable suspicion (there based upon his own observations)[5] may conduct a frisk for weapons for his protection. Indeed, the classic *Terry* scenario is a street encounter where the police officer is face-to-face with a suspect and has to make a number of immediate decisions. The purpose of *Terry* is certainly not served by bolstering an unreliable allegation with the observation of one or more innocent details; rather, a *Terry* stop is a protective-preventive measure in the face of a *reliably reported* or *observed activity* suggesting an on-going crime:

> [W]here a police officer observes *unusual conduct* which leads him reasonably to conclude in light of his experience that *criminal activity may be afoot* and that *the persons with whom he is deal-*

---

**3.** The trial court focused its analysis on the lesser standard of reasonable suspicion rather than probable cause. The court noted: "[w]hat I am saying is that there was not even articulable suspicion under *Terry* to approach the car, because even though the government was relying on probable cause, if I had found articulable suspicion, it could have been upheld under that."

**4.** 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

**5.** It is an exaggeration for the majority to characterize the "burglary casing" activity observed by the experienced officers in *Terry* as "innocent."

*ing may be armed and presently dangerous,* where in the course of investigating this behavior he identifies himself as a policeman and makes *reasonable inquiries,* and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own ... safety, he is entitled for the protection of himself ... to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

392 U.S. at 30, 88 S.Ct. at 1884 (emphasis added). The validity of an investigatory stop must substantially meet the two-prong test that is inherent in *Terry.* First, the officer must observe unusual conduct and it must be apparent that "criminal activity is afoot." It is only then, after a right of confrontation is established through a reasonable articulable suspicion, that he (or she) is entitled to conduct a protective frisk for his (or her) own protection. Implicit in *Terry* is the concept of lawful confrontation—there must be reasonable articulable suspicion to justify a stop. Justice Harlan's concurrence, in *Terry,* speaks directly to this issue:

> [I]f the frisk is justified in order to protect the officer during an encounter with a citizen, the officer must first have constitutional grounds to insist on an encounter, to make a *forcible* stop.... If and when a policeman has a right instead to disarm such a person for his own protection, he must first have a right not to avoid him but to be in his presence.... I would make it perfectly clear that the right to frisk in this case depends upon the reasonableness of a forcible stop to investigate a suspected crime.

*Id.* at 32–33, 88 S.Ct. at 1885–86 (Harlan, J., concurring).

In the circumstances of the instant case, it is undisputed that the officers observed no activity suggesting an on-going crime. The reasonableness of articulable suspicion therefore must hinge upon the indicia of reliability in the informant's tip. The Supreme Court in *Adams v. Williams, supra,* found enough of an indicia of such reliability where 1) the informant was known to the officer personally and had provided him with information in the past; 2) the informant came forward personally to give information that was immediately verifiable at the scene, and as such could have been subject to immediate arrest for a false complaint had the tip proven incorrect—all circumstances which the Court noted constituted "a stronger case than obtains in the case of an anonymous telephone tip." 407 U.S. at 146, 92 S.Ct. at 1923.

By contrast, in the instant case, we have nothing more than an anonymous telephone tip.[6] We have nothing corroborating that tip except a description of a car parked

---

**6.** LaFave cites numerous cases which illustrate the tendency of the state courts to hold unreasonable, because of inadequate corroboration, stops based upon an anonymous tip: *Lachs v. State,* 366 So.2d 1223 (Fla.App.1979) (emphasizing that police cannot stop on basis of anonymous tip, but that no such problem in this case because police acted on "a telephone complaint from an identified citizen ... who was an actual eyewitness to a crime"); *State v. Temple,* 65 Haw. 261, 650 P.2d 1358 (1982) (anonymous phone call stating person had gun in defendant's vehicle not grounds for stop, as it "failed to rise above the level of unsubstantiated and conclusionary hearsay"); *Jackson v. State,* 157 Ind. App. 662, 301 N.E.2d 370 (1973) (information from unknown source that defendant carrying a gun not grounds for stop "absent anything whatsoever to corroborate the information"); *People v. De Bour,* 40 N.Y.2d 210, 386 N.Y.S.2d 375, 352 N.E.2d 562 (1976) (anonymous call that black man in bar with red shirt had gun; court says anonymous tips "are of the weakest sort since no one can be held accountable if the information is in fact false"); *State v. Lesnick,* 84 Wash. 2d 940, 530 P.2d 243 (1975) ("[t]he fact that anonymous tipster accurately identified the defendant's vehicle is not such corroboration or indicia of reliability as to make reasonable the officers' action"). 3 LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 9.3 (e) at 482 n. 319 (2d ed. 1982); *see also State v. Hobson,* 95 Idaho 920, 523 P.2d 523 (1974) (McQuade, J., dissenting) ("anyone can call the police, describe an automobile and its owner and allege possession [of a weapon] with the result that the described person will be pulled over, required to identify himself, interrogated about criminal behavior, and the automobile subjected to a visual search"). These cases make it clear that while "indicia of reliability" is a difficult concept to define, much more is needed than the color of a vehicle, its location, and an unverified allegation.

in a certain location. The trial court correctly concluded:

> If you put it all together, all you had was an anonymous tip that somebody was selling guns out of a car. They [detective and policemen] go there and they see this car, which is the only Volkswagen sitting there at the corner. But, there was no hesitation, there was no indication of anybody standing around the car which would serve to corroborate the tip. *There was just absolutely nothing but a car sitting there....* I know that the case law does indicate that innocent corroborative circumstances may be sufficient to warrant a *Terry*-type seizure or *Terry*-type stop, but if you are going to use innocent circumstances such as there was a Volkswagen there, an orange Volkswagen ... if you are going to use innocent observations to amass data necessary for articulable suspicion, *then you need stronger veracity on the other end of the spectrum* [emphasis added].

The trial court's reference to veracity is both telling and instructive. Constitutionally speaking, there must be reliability at one end of the spectrum or verification at the other end. It is a troubling thought that an informant, who refuses to provide an identity can, at will, undermine the protections of the Fourth Amendment. Here there was every reason for the police to investigate, but the police did not investigate; they seized, frisked, searched, arrested, and then asked questions. All of this was done before the police had reasonable grounds to suspect that criminal activity was afoot, much less probable cause to arrest. In the context of *Adams,* "the central issue ... is whether the informant's information is so *reliable* and *complete* that it makes past, present or pending criminal conduct sufficiently likely to justify a stopping of the designated person for investigation." 3 LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 9.3(e) at 475 (2d ed. 1987) (emphasis added). Here, the informant's information

was both unreliable and incomplete—there was no description of the suspect, no indication whatever as to the modus operandi of the alleged criminal transaction, and no information as to the identity or location of the informant:

> Even the lesser intrusion of a stopping for investigation should not be permitted when the so-called corroboration is of nothing more than "information available to any passerby or resident on the street," for in such instances the facts do not "demonstrate that the anonymous informant had any special familiarity with the affairs of" the suspect.

*Id.* at 484. All we have is the color of a car, its location, and an allegation which was not corroborated by the police when they arrived on the scene. There is nothing here to suggest that the allegation of a crime could not have been readily manufactured, or that an improperly motivated party doing so could be held accountable for a false report. Our sanction, therefore, of the police conduct in this case can bring us dangerously close to inviting intrusions based on nothing more substantial than inarticulate hunches. *See Terry, supra,* 392 U.S. at 22, 88 S.Ct. at 1880.

Finally, I am unpersuaded by the majority's attempt to garner support from the conclusion that "the anonymous tip in the instant case provided no less information than such tips in other cases in which this court has upheld *Terry* stops."[7] The cases, relied upon to reverse the finding of the trial court in the instant case, are distinguishable either as instances that involve risk-taking face-to-face street encounters between police and citizens or as presenting information more reliable than the bare bones tip in the instant case. Thus, in *United States v. Mason,* 450 A.2d 464 (D.C.1982), there was an anonymous tip that a man was standing at a specified corner and dressed in a specified manner *carrying a bag with a gun.* We held this to be a *Terry* stop situation where a police officer must make an immediate decision to take steps for his own protection. In *Ma-*

---

**7.** The Court in *Adams, supra,* made an observation which it would be well for an appellate court to remember: "Informants' tips like all other clues and evidence coming to a policeman on the scene may vary greatly in their value and reliability. One simple rule will not cover every situation." 407 U.S. at 143, 92 S.Ct. at 1921.

*son,* however, the officer first confronted the described individual with the information the officer had just received; the bag which the citizen carried (and which contained marijuana) was not opened until Mr. Mason placed it on the ground at his feet; Mason was searched incident to his arrest. Significantly, in *Mason* our court, while relying on *United States v. McClinnhan,* 212 U.S.App.D.C. 368, 660 F.2d 500 (1981)[8] perceptively observed, "[t]he unique circumstances under which each case arises in this area of the law makes the term 'binding precedent' a misnomer." *United States v. Mason, supra,* 450 A.2d at 466.

I agree that there is no binding precedent and no justifiable reason to reverse the trial court. I would affirm.

**8.** In *United States v. McClinnhan, supra,* (an anonymous tip described a man carrying a sawed-off shotgun in a black briefcase; here the tip itself suggested the *dangerousness* of the situation and that the weapon was immediately accessible). The court stated: "We are not upholding today a warrantless search for anything other than an *immediately-accessible* dangerous weapon.... We are not considering a warrantless search based upon an anonymous tip that is not corroborated...." *Id.* at 373, 660 F.2d at 505. *See also Lawson v. United States,* 360 A.2d 38 (D.C.1976) (informant was *eye witness* and suspect was not only carrying a pistol but "he made motions which looked as though he was trying to hide something"); *Galloway v. United States,* 326 A.2d 803 (D.C.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975) (informant was an eyewitness to a rapidly-moving street occurrence); *United States v. Walker,*

115 Daily Wash.L.Rptr. 1433 (D.D.C. July 13, 1987) (even where informant gave *additional* information such as suspect's name, license plate number, and alleged that drugs and stolen property were on the scene, court held that "[t]hese facts either alone or in combination do not create the slightest suspicion of illegality"—mere corroboration of obvious details is not enough); *cf. Groves v. United States,* 504 A.2d 602 (D.C.1986) (eyewitness informant *identified* himself and called police twice alleging that the driver of a specific car at specific location was armed) (Mack, J., dissenting and citing *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)) ("[b]ut the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestees committed the felony or ... were in the process of committing the felony").