**Ernest GILES, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12981.**

District of Columbia Court of Appeals.

Argued Oct. 10, 1978.

Decided April 9, 1979.

Frederick J. Sullivan, Bowie, Md., for appellant.

Paula J. Page, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, David W. Stanley and Michael W. Farrell, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

Appellant was convicted of second-degree murder while armed and sentenced to prison for a term of eight to twenty-four years for killing one Eleanor Haywood. He claims on appeal that a confession was improperly admitted into evidence since it was the product of an illegal arrest. For the reasons discussed herein, we affirm.

On January 1, 1977, James Haywood discovered his wife's lifeless body on the floor of their apartment. She had been stabbed repeatedly and strangled with a telephone cord. In the course of investigating the murder, homicide detectives learned that appellant had been a friend of the deceased and had been seen near her apartment around the time of the killing. Unable to locate appellant for questioning, Detectives Donald and Jackson left messages with several of appellant's friends asking that he contact them. Word got back to appellant and on January 31, 1977, he telephoned Detective Jackson and agreed to meet him at the station the next day. Since appellant had no means of transportation, Jackson arranged to pick him up.

The following morning at 9 a. m., Detective Jackson and Detective Donald arrived at the appointed place and appellant asked what they wanted. They told him they would rather talk to him at the police sta-

tion, at which point appellant got into their car and was driven to police headquarters. Upon arrival at the homicide office, appellant was told that he was a suspect in the murder but that the police did not have sufficient evidence to arrest him. He was twice advised of his *Miranda* rights and told that he was not under arrest. After acknowledging that he understood his rights, appellant agreed to discuss his whereabouts during the killing. From 9:30 a. m. to 12:30 p. m., he was questioned by three detectives and a statement was taken in which appellant denied any involvement in the crime. During this time appellant left the room three times to use the bathroom. The trial court found that on two of these occasions he was unescorted.

At about 12:30 Detective Donald told appellant they knew he was lying and wanted to check out his story. Appellant's response was "good." For the next four hours, the detectives brought in several witnesses who had been named in appellant's alibi and questioned them. During this period appellant was left alone in the interview room several times. Although each witness refuted appellant's alibi and the detectives confronted him with these inconsistencies, appellant continued to stand by his original statement.

At approximately 4:20 p. m., the detectives told appellant he was a prime suspect but they did not have enough evidence to arrest him. They told him they were not going to question him further, that he was free to leave, and they directed him to do so. Appellant remained seated for a few moments in silence. Detective Kilcullen then asked him what he had done with the television which was missing from the Haywood's apartment after the murder. Appellant responded: "I sold it." He was thereupon formally arrested, handcuffed, and advised of his rights. Between 4:30 and 6 p. m., appellant gave a full statement in which he confessed tc the murder. His subsequent motion to suppress this statement was denied and it was admitted as evidence at the ensuing trial.

Appellant does not claim that the statement was made involuntarily. Rather, he contends that it was the product of an arrest made without probable cause and thus inadmissible under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). To resolve this issue we must first determine whether appellant was under arrest prior to 4:20 p.m. when he made the first incriminating remark. Appellant places the time of arrest at 9 a. m., when he was first picked up by the detectives, or alternatively, sometime during the prolonged period of questioning, such as when the detectives discredited his story.

The trial court found that the defendant initiated the contact, chose to accompany the police to headquarters, was not handcuffed and was free to go. The court found that the atmosphere, although unpleasant did not clearly indicate restraint; that he was given frequent warnings of his rights and understood them. The court concluded that "there was absolutely no coercion manifested" and that the defendant was not under arrest at the time he made his admission. We now turn to the legal aspects of the case.

The essence of an arrest is a restraint of freedom. "[T]here must be an actual or constructive seizure or detention of the person, performed with the intention to effect an arrest and so understood by the person detained." *Jenkins v. United States*, 161 F.2d 99, 101 (10th Cir. 1947). At the opposite end of the spectrum, the court in *Wylie v. United States*, 186 U.S.App.D.C. 231, 236, 569 F.2d 62, 67 (1977), recently noted: "police-citizen communications which take place under circumstances in which the citizen's 'freedom to walk away' is not limited by anything other than his desire to cooperate do not amount to 'seizures' of the person, and consequently may be initiated without a reasonable, articulable suspicion, much less probable cause." [Citations omitted.] In determining whether an arrest has occurred, neither an announcement of arrest nor an express disclaimer of intent to arrest by the officer is

controlling. *Campbell v. United States*, D.C.App., 273 A.2d 252 (1971). Nor is the defendant's subjective belief as to whether he was under arrest determinative. We must consider the defendant's conduct, the actions and intentions of the police, and all of the surrounding circumstances and determine " 'what a reasonable man, innocent of any crime, would have thought had he been in defendant's shoes.' " *Hicks v. United States*, 127 U.S.App.D.C. 209, 382 F.2d 158 (1967), quoting from *United States v. McKethan*, 247 F.Supp. 324, 328 (D.D.C. 1965), *aff'd* by Order No. 20059 (Oct. 16, 1966).

To resolve this appeal, we must make an independent determination of a question of law, to wit: when did the arrest occur? *See Henry v. United States*, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). To make this determination, we give deference to the court's findings of fact as to the circumstances surrounding the appellant's encounter with the police. D.C.Code 1973, § 17–305. *See Seals v. United States*, 117 U.S.App.D.C. 79, 81, 325 F.2d 1006, 1008 (1963), *cert. denied*, 376 U.S. 964, 84 S.Ct. 1123, 11 L.Ed.2d 982 (1964). We conclude, as did the motions court, that appellant was not under arrest prior to the time he made the incriminating remark. Appellant's contention that he was under arrest as of the initial encounter with the detectives at 9 a. m. is simply untenable. We note first that it was appellant who set the entire chain of events in motion by calling the detectives and agreeing to meet them. His continued willingness to talk to them was manifested by his presence at the agreed upon place and time and by his acquiescence in going to the station at the detectives' request.[1] Under these circumstances and in light of the fact that appellant was never handcuffed, searched, or otherwise treated as an arrestee, appellant had no real reason to believe he was under arrest at that point and we conclude that he was not.

With regard to the subsequent protracted period of questioning, the evidence supports the trial court's findings that appellant was at all times free to depart and we find no substantial basis to upset its findings. Upon arrival at the station appellant was told he was not under arrest and was advised of his *Miranda* rights. Although the questioning took place in a small room, appellant's movements were not restrained. He went to the rest room unescorted on two occasions. Several times during the afternoon he was left alone in the interview room with the door unlocked. Appellant testified at the suppression hearing that he did not feel free to leave during this time, but he also stated that he never attempted to do so. Finally, at 4:20 p. m., appellant was specifically told he was free to leave and was directed to do so.

The cases relied upon by appellant, *Campbell v. United States*, D.C.App., 273 A.2d 252 (1971), and *Seals v. United States, supra*, are factually distinguishable. *Seals* involved a 19-year-old high school student who was never left alone during the period of the interrogation and never told he was free to leave. In the *Campbell* case, an important factor in the court's decision was that the defendants were held at the station for over an hour but were never told they were not under arrest. In neither *Seals* nor *Campbell* did the defendant initiate the encounter with the officers. While this factor is not dispositive, it does shed light on the tone of ensuing events and it has an important bearing on whether a reasonable man would believe himself to be under arrest.

The following observations by the court in *United States v. Vita*, 294 F.2d 524 (2d Cir. 1961), *cert. denied*, 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788 (1962), are equally pertinent here:

> [The defendant] was apparently confident of his ability to talk himself clear of

---

1. Appellant suggests in his brief that he was "ordered" rather than "invited" to get into the detectives' car. Even if that were the case, it would not alter our assessment of the situation. It had already been agreed that the detectives would pick appellant up to take him to the station; that was the very purpose of the 9 a. m. meeting. Thus, taken in context the instruction would not have borne coercive implications.

whatever suspicions the F.B.I. had of his possible complicity. Surprising as it may seem, the guilty are often as eager as the innocent to explain what they can to law enforcement officials. The very same naive optimism which spurs the criminal on to commit his illegal act in the belief that it will not be detected often leads him to feel that in a face-to-face encounter with the authorities he will be able to beguile them into exculpating him. Having chosen to talk with the F.B.I. agents, [the defendant] cannot now be heard to complain because his calculated risk worked to his disadvantage. [Citations omitted.]

Police interviews of suspects at headquarters are not unusual and when done properly can be a very useful and expeditious means of conducting and disposing of necessary interrogations.

Here appellant went to the station of his own free will and did not object when the detectives wanted to verify his alibi statement. The fact that his legal posture worsened as the day progressed is an insufficient basis for concluding that he was under arrest during this time. *See In re T. T. T.,* D.C.App., 365 A.2d 366 (1976). Under the circumstances of this case, we are constrained to conclude that appellant's continued presence at the station was voluntary and uncoerced and he was not under arrest until he admitted having taken the television.

Accordingly, the judgment of conviction is

*Affirmed.*