**Leroy CAUTHEN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 89–1216.

District of Columbia Court of Appeals.

Argued Oct. 24, 1990.

Decided June 7, 1991.

Julia Leighton, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, Washington, D.C., for appellant.

Karen L. Melnik, student counsel, with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Asst. U.S. Atty., were on the brief, Washington, D.C., for appellee.

Before STEADMAN and FARRELL, Associate Judges, and KERN, Senior Judge.

FARRELL, Associate Judge:

On March 15, 1989, at approximately 2:00 a.m., the police received a call from an unknown citizen stating that three or four individuals were selling drugs at the corner of Fourteenth and Buchanan Streets, N.W. No additional description of the individuals was given. Within a period of time unclear in the record but which the government

concedes to be fifteen to twenty minutes, police officers arrived at the intersection in marked vehicles and saw three to five persons standing on the northwest corner. The group dispersed on sighting the police, as two men "took off around the corner" and appellant began to walk away "at a brisk pace." One of the officers jumped out of his car and walked quickly after appellant. Appellant then stopped and placed on the ground a tote bag he was carrying; he made no attempt to move on. The officer took hold of appellant's arm, picked up the bag, and ushered him back to the police car where he asked him whose bag it was. Appellant replied, "It's not mine. You can have it if you want it." The bag was searched at the scene and found to contain cocaine.

The trial judge found—and appellant does not dispute—that if the police acted properly before taking hold of appellant and the bag, the Fourth Amendment was not violated because appellant either abandoned the bag at that point or consented to a search of its contents. The court further concluded that the police, on the basis of the telephone call and their own observations, had reasonable suspicion justifying the seizure of appellant and the bag. We are compelled to reverse.

## I.

■ We begin with the relevant legal principles undisputed by the parties. To justify an investigative detention or seizure under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981). As the Supreme Court recently explained, "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of circumstances' that must be taken into account when evaluating whether there is reasonable suspicion." *Alabama v. White,*

— U.S. ——, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990), quoting *Cortez*, 449 U.S. at 417, 101 S.Ct. at 694. These factors (the content of the information and its degree of reliability) reflect the criteria the Court traditionally has employed in evaluating anonymous tips as a basis for finding probable cause, *viz.*, the informant's "veracity," "reliability," and "basis of knowledge." In *White*, the Court confirmed its earlier holding in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), that these factors "remain 'highly relevant in determining the value of [the informant's] report,'" *White*, 110 S.Ct. at 2415, and applied them to the lesser showing required for reasonable suspicion. In addition to knowledge of the informant himself, "corroboration of details of an informant's tip by independent police work," *Gates*, 462 U.S. at 241, 103 S.Ct. at 2333, can provide a substantial basis for crediting the informant's statement. *Goldston v. United States*, 562 A.2d 96, 100 (D.C.1989).

■ On appeal, this court makes an independent determination of whether there was reasonable suspicion, *Brown v. United States*, 590 A.2d 1008, 1020 (D.C.1991) (probable cause), although in doing so "we give deference to the [trial] court's findings of fact as to the circumstances surrounding the appellant's encounter with the police." *Giles v. United States*, 400 A.2d 1051, 1054 (D.C.1979). The facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court's ruling. *Nixon v. United States*, 402 A.2d 816, 819 (D.C.1979).

## II.

■ Our task, then, in this case is to apply a "totality of the circumstances approach ... taking into account the facts known to the officers from personal observation, and giving the anonymous tip the weight it deserved in light of its indicia of reliability as established through independent police work." *White*, 110 S.Ct. at 2416. We begin with the tip itself and ask what the police knew about its reliability and content—its quality and quantity. The trial judge found that the police went to

Fourteenth and Buchanan Streets "pursuant to a citizen complaint about drug dealing." The government thus urges that we apply the "presumption," which we have "long recognized," that "a citizen is prima facie a more credible source than a paid police informant," and further that when the citizen appears to have personally observed a crime, "the reliability of his or her information is greatly enhanced." *Allen v. United States*, 496 A.2d 1046, 1048 (D.C. 1985) (citations and internal quotation marks omitted). The government points to the testimony of Officer Morgan that he responded to Fourteenth and Buchanan Streets after "Lieutenant Hawkins came in and said a woman *who lives in the area* called, she said there were three to four subjects at the corner of 14th and Buchanan, *they're there now* and they are selling drugs" (emphasis added). The government asserts that from this it can be inferred that the woman had personally observed the illicit activity that she said was continuing.

The judge made no express finding that the caller lived in the area and had personally seen the drug activity she reported, perhaps because Officer Morgan's statement quoted above was hearsay several times removed, and elsewhere he testified only that Hawkins had told him the station clerk had received a call "that there were three or four subjects selling drugs on the

corner of 14th and Buchanan Streets, N.W." Also, the caller in this case does not compare favorably with the citizen in *Allen, supra*.[1] *See also Brown, supra*, at 1016–1017. Nevertheless, we may assume that the anonymous caller possessed citizen-eyewitness status and hence that her report had reliability beyond that accorded a tip from a caller whose basis of knowledge is wholly unknown. It is when we turn to the content of the information and the circumstances of its corroboration that the government's argument falters.

The tip stated that three or four persons were presently at Fourteenth and Buchanan Streets selling drugs. Other than describing the number of participants, it gave no physical description of the suspects by sex, race, size, clothing or any other distinguishing feature;[2] nor did it describe any object, such as a car or storefront, in the vicinity of which they could be located.[3] *See Brown, supra*, at 1017, 1023 (noting "scanty" description furnished by anonymous informant). These omissions are important when we consider the other key factor in this case, the delay of at least fifteen minutes in the arrival of the police at the reported location.[4] Appellant asserts, and the government does not disagree, that this response time is considerably longer than the delay involved in our past decisions on point.[5] The government

---

1. In that case we observed: "Although Officer Simms did not know [the caller's] name, he had spoken with her on several prior occasions, recognized her voice, knew approximately where she lived, and also knew that she was active in her community's campaign against drug traffic. Information she had given the police in the past had frequently resulted in the seizure of narcotics." 496 A.2d at 1049.

2. *Compare, e.g., Offutt v. United States*, 534 A.2d 936 (D.C.1987) (informant described suspect's attire, gave his weight and height, and gave his location within building telling police where on his person drugs and gun were located); *United States v. Mason*, 450 A.2d 464 (D.C.1982) (police were told where suspect was located, what he was wearing, and that he was carrying a black tote bag); *Lawson v. United States*, 360 A.2d 38 (D.C.1976) (police were told suspect was at a phone booth, wearing blue jeans, and had a grey beard).

3. *Compare, e.g., United States v. Johnson*, 540 A.2d 1090 (D.C.1988) (tip provided location of suspect and said he was in an orange Volkswagen); *Groves v. United States*, 504 A.2d 602 (D.C.1986) (tip gave location of suspect and said he was in green Pontiac with white vinyl top).

4. The motions judge found that the police officers "responded to the complaint within ten to fifteen minutes." The government agrees that if this was meant to denote the time it took the officers to reach the intersection, the record does not bear it out as the government acknowledges that the police arrived "within approximately 15 to 20 minutes."

5. *E.g., Jefferson v. United States*, 476 A.2d 685 (D.C.1984) (police arrived on scene "about five minutes after receiving phone call"); *Allen*, 496 A.2d at 1049 (five minutes); *Lawson*, 360 A.2d at 39 (police arrived in less than three minutes); *Mason*, 450 A.2d at 465 (less than two minutes); *United States v. Johnson, supra* note 3 (less than

argues, however, that the delay is neutralized by the fact that the events occurred at 2:00 a.m. when relatively few people could be expected to be on the street, and the fact that the police upon arriving saw no other individuals at the intersection.[6]

These facts do not suffice on this record. In their testimony the police officers acknowledged that a bus and taxi cab stop, a convenience store, and a twenty-four-hour gas station were located at or near the intersection and that bus service along that route continued late into the night. Moreover, as the police drove toward the intersection "there were other people throughout the block ... on the west side of the street on the 14th Street corridor." In these circumstances, the lack of specificity in the tip leaves too much uncertainty whether the persons the police saw at the corner were the same ones the caller had identified more than a quarter of an hour earlier.

The government further argues that any uncertainty about appellant's involvement in selling drugs—bearing in mind that only reasonable suspicion is needed—was overcome by his behavior in abruptly walking away and then stopping and depositing his bag when the police pulled up in their marked vehicles. It is basic that independent police observation of suspicious conduct can offer confirmatory support for a tip that otherwise would be inadequate. *See Lawson v. United States, supra.* We conclude, however, that the government's reliance on evidence of "flight" in this case is foreclosed by this court's *en banc* decision in *Smith v. United States,* 558 A.2d 312 (D.C.1989). In *Smith* the court recognized that "flight from authority—implying consciousness of guilt—may be considered among other factors justifying a *Terry* seizure." 558 A.2d at 319 (quoting *United States v. Johnson,* 496 A.2d 592, 597 (D.C.

1985)). However, the en banc majority held, such use of flight presupposes a finding that "the manner of flight suggests consciousness of guilt rather than a mere desire not to interact with the police.... For flight to suggest consciousness of guilt—a mentality other than a legitimate desire to avoid the police—that flight not only must be very clearly in response to a show of authority *but also* must be carried out at such a rate of speed, or in such an erratic or evasive manner that ·a guilty conscience is the most reasonable explanation." 558 A.2d at 319 (emphasis added) (separate majority opinion by Judge Ferren).

Thus, the fact that in this case the individuals, including appellant, clearly knew that police were present does not satisfy the *Smith* test unless appellant's reaction was in the manner *Smith* requires. It was not. As in *Smith,* appellant did not "bolt or run" from the scene, *id.* at 317, but walked away at a fast pace.[7] *Smith* expressly held that "the fact that the person chooses to leave the scene, even at a brisk pace, cannot reasonably arouse suspicion" if the police "do not otherwise have a legitimate basis for a *Terry* stop." *Id.* at 319. *Smith* thus refused to allow a departure shy of a run (or equivalent evasiveness) to complete the mosaic of facts known to the police comprising reasonable suspicion.

All three judges on this division believe that this holding of *Smith* may be too inflexible and even in tension with the broader holding of the lead majority opinion in *Smith* by Judge Newman. *See* 558 A.2d at 316. But a division may not ignore either majority statement of *Smith's* holding. Nor may we circumvent it by concluding that appellant's actions in suddenly stopping and placing the tote bag on the ground amounted to the additional "erratic

---

fifteen seconds). *Cf. Brown, supra,* at 1017 (court "left to speculate as to how much time elapsed between the informant's call and the sighting of [defendant]").

**6.** Officer Morgan testified that he saw no one else on the northeast or southeast corner but "never got [as] far down" as the southwest corner.

**7.** Nor does the fact that two other persons "took off around the corner." *i.e.,* apparently ran away, appear to distinguish this case from *Smith,* where a group of individuals similarly dispersed and were each pursued by police officers. 558 A.2d at 313.

or evasive" conduct *Smith* requires. The government is correct that appellant did not do these acts in response to a police command, but the record also contains an acknowledgment by the seizing officer that he "jumped out" of his car and was moving quickly toward appellant to "stop and question him" when appellant saw him and stopped. An innocent person might have reacted no differently in the circumstances. The trial judge rejected the suggestion that appellant revealed an intent to abandon the bag or divest himself of it merely by placing it at his feet. Accordingly, we cannot find in these actions the requisite additional proof of an awareness of guilt. In light of *Smith*, the observations of the police at the scene provided no independent information compensating for the generality of the tip and the belated police confirmation of it.

Finally, we consider the application to this case of *Alabama v. White, supra*, the Supreme Court's most recent discussion on this subject, on which appellant heavily relies. Appellant argues that the anonymous tip was inadequate under *White* because it contained no predictions as to anyone's *future* behavior, reciting only "conditions existing at the time of the tip," *i.e.*, that drug sellers were at work at Fourteenth and Buchanan Streets. *White*, 110 S.Ct. at 2417 (quoting *Illinois v. Gates*, 462 U.S. at 245, 103 S.Ct. at 2335). It is true that in *White*, as in *Gates*, the Court deemed important the anonymous caller's "ability to predict [the defendant's] *future behavior*, because it demonstrated inside information—a special familiarity with [the defendant's] affairs." 110 S.Ct. at 2417 (emphasis in original). The Court contrasted this with a tip reporting merely that a particular car would be found in front of a building, a condition presumably existing at the time of the call and which anyone could have "predicted." *Id.* Appellant argues that the tip here does not differ materially from the preceding example and suffers

the same deficiency of information revealing inside knowledge.

*White* is not directly in point because the government does not rely here on the caller's "insider" status to confirm her basis of knowledge; rather it characterizes her as an eyewitness informant, and we have conceded some merit to that position. *White* establishes no mandatory condition that a tip predict future activity to be reliable, *see Brown, supra*, at 1023 (under *White*, "accurate prediction of future events" has no "talismanic quality"), but stresses the decisiveness of such information where otherwise there is nothing from which a court can "conclude that [the caller] is either honest or his information reliable." *White*, 110 S.Ct. at 2415, quoting *Gates*, 462 U.S. at 227, 103 S.Ct. at 2326. Nevertheless, *White* does shed light on the reasonableness of the seizure in this case, and offers little help to the government's position. In *White* the tip supplied "a range of details" about "future actions of third parties ordinarily not easily predicted," and the police verified "significant aspects" of those predictions. Even so, in upholding the stop of the defendant the Court conceded that "it is a close case." *Id.* 110 S.Ct. at 2417. *White* thus reaffirms that the standard of "some minimal level of objective justification to validate [a] detention or seizure," *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984), is not bare of content. In the present case the call to the police furnished no details which they could confirm fifteen minutes later with any reasonable expectation that appellant was one of the persons reported selling drugs. In *White's* words, by that time there remained no "significant aspects" of the tip which could be confirmed to buttress its reliability.[8]

The judgment of conviction is, accordingly,

*Reversed.*

---

8. We express no opinion whether the tip as confirmed would have been sufficient had it reported possession of a dangerous weapon or a recent (or ongoing) crime of violence. This court has recognized that the reasonableness of police behavior may take into account such factors. *E.g., United States v. Mason, supra; Rushing v. United States*, 381 A.2d 252, 256 (D.C.1978).

KERN, Senior Judge, concurring:

When the police arrived at the intersection in northwest Washington where they effected a *Terry*-stop [1] of appellant, at least fifteen minutes had elapsed since they received a citizen's complaint by telephone that drugs were being sold there. The police had no descriptions from the complainant caller of the persons allegedly observed selling drugs.

Upon the arrival of the police, appellant, who was one of several persons there, walked away at a brisk pace. This court stated in *Smith v. United States*, 558 A.2d 312, 319 (D.C.1989) (en banc), that "[f]or flight to suggest consciousness of guilt ... that flight ... must be carried out at such a rate of speed ... or in such an erratic or evasive manner that a guilty conscience is the most reasonable explanation." I agree that the reaction by appellant to the police arrival did not meet the strict *Smith* standard.[2]

I share with the other members of this panel what the dissent characterizes as "considerable doubt about the proper scope and application of the test" enunciated by the concurring opinion adopted by the majority in *Smith*. I also agree that the Supreme Court's recent decision in *California v. Hodari D.*, —— U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), may cast further doubt upon the correctness of the standard in *Smith*. Nevertheless, this decision is the law presently and this division is bound by it. *See M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971).

1. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. I am not persuaded that appellant's manner of departure, walking away from one police car and into the street with apparent disregard for oncoming traffic so as to step in front of an approaching police car, is so erratic or evasive that a guilty conscience is the *most* reasonable explanation of appellant's behavior here.

Therefore, I concur in the holding that under the particular circumstances here the *Terry* stop was not valid and the judgment of conviction must be reversed.

STEADMAN, Associate Judge, dissenting:

Given our precedents and the posture of this case as presented to us, Judge Farrell's opinion is not without considerable persuasive power. Nonetheless, I must register a dissent.

An examination of the record of this case suggests that, even accepting the analysis of Judge Ferren's *Smith* concurrence, the manner of the appellant's departure upon the arrival of the police officers was more than that of a person who "chooses to leave the scene, even at a brisk pace." *Smith v. United States*, 558 A.2d at 319. It appears that so concerned was appellant with events and so heedless of his safety that, in departing from the scene while looking at the first squad car, he stepped directly into the street into the path of a second arriving squad car, which was forced to stop suddenly to avoid hitting appellant.[1] This strikes me as the sort of "erratic or evasive manner" of departure that could be inconsistent with that of someone merely seeking to avoid an innocent encounter with the police. While it is indeed true that the trial court made no specific finding in this regard, the court did make clear its awareness of the relevance of a "consciousness of guilt" to the departure.[2] Thus, I think that appellant's depar-

1. The government in its statement of facts summarizes the happening as follows: "Appellant was seen walking at a brisk pace across the street as if to avoid Officer Morgan's car [the first squad car to arrive] and to avoid being intercepted. Officer Hassen, in the second and as-yet-unobserved marked cruiser, saw appellant watching Officer Morgan's car as he tried to cross the street in front of the cruiser occupied by Officers Nauheimer and Hassen. Officer Hassen stopped the car abruptly."

The trial court's opinion recited the facts as follows: "As Officer Morgan's car turned the corner, the Defendant, seeing that it was a police car, walked quickly from the sidewalk behind Officer Morgan's car and in front of Officer Nauheimer's car. Officer Nauheimer brought his automobile to a sudden stop."

2. The trial court, without making at that point any reference to the near-accident, stated that "when the defendant fled the scene, he clearly demonstrated a consciousness of guilt." The comment was made in the process of distinguishing the *Smith* case, which the trial court

ture could be a permissible factor to consider along with all the other circumstances here, enough taken together to justify a brief *Terry* stop.[3]

I might add that I harbor considerable doubt about the proper scope and application of the test expressed in Judge Ferren's concurrence in *Smith.* The majority opinion in *Smith,* written by Judge Newman, signals that caution must be applied in dealing with departures upon the arrival of police, and sets forth the proposition that "[t]o provide grounds for suspicion, therefore, the circumstances of the suspect's efforts to avoid the police must be such as permit[ ] a rational conclusion that flight indicated a consciousness of guilt." 558 A.2d at 316 (quotations omitted).[4] However, it is only in the concurring opinion by Judge Ferren, joined to be sure by the other members of the majority opinion, that the perhaps draconian requirement is set forth that for flight to suggest consciousness of guilt and thus be a permissible factor to be considered *at all* for *Terry*-stop analysis the departure "must be carried out at such a rate of speed, or in such an erratic or evasive manner that a guilty conscience is *the most reasonable explanation.*" 558 A.2d at 319 (emphasis added). Otherwise, says Judge Ferren, "if the police do not *otherwise* have a legitimate basis for a *Terry* stop ... then the fact that the person chooses to leave the scene, even at a brisk pace, cannot reasonably arouse suspicion."[5] *Id.* (The consequence of this analysis, of course, is that

the departure at a brisk pace can *never* be one of several relevant factors in *Terry* analysis. If the police "otherwise" have a legitimate basis for a *Terry* stop, there is no need to consider the manner of departure at all.)

It seems to me that there is a significant difference between a test that requires that the manner of departure *"permit* a rational conclusion that flight *indicated* a consciousness of guilt"[6] and one that requires that a guilty conscience be "the most reasonable explanation." Inherently, *Terry* stops deal with articulable suspicions, not proven facts, and often with actions that bear perfectly innocent explanations. It is the "totality of circumstances" that controls. It seems inconsistent with that approach to cabin off one particular fact, the manner of departure upon the known arrival of police officers, and permit that fact to be considered *at all* only if the *most* reasonable explanation is a guilty conscience. This standard would only seem appropriate to, and indeed would justify, a *Terry* stop based on the manner of departure alone. *See State v. Johnson,* 444 N.W.2d 824 (Minn.1989) (police officer who observed motorist turn off main highway onto secondary road immediately after making eye contact and re-enter highway within one minute justified in concluding that motorist was attempting to avoid him and in subjecting vehicle to an investigative stop).

I think Judge Ferren's articulation of the requisite standard that must be met before

did not do in the manner suggested above but rather on the grounds that 1) in *Smith* the defendant was under suspicion merely because of his association with other suspects, while here the police had a citizen's descriptive tip, and 2) in *Smith* the officers were in plain clothes and thus not identifiable as such, while here the officers were in uniform and driving marked cars. However, earlier in the order, the trial court did recite some of the facts of appellant's departure, see note 1, *supra.*

**3.** As the majority opinion here notes, "[t]he facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court's ruling. *Nixon v. United States,* 402 A.2d 816, 819 (D.C.1979)."

**4.** Earlier in the discussion, the majority opinion had recognized "as a general proposition that

flight from authority—implying consciousness of guilt—may be considered among other factors justifying a *Terry* seizure." 558 A.2d at 316, quoting *United States v. Johnson,* 496 A.2d 592, 597 (D.C.1985).

**5.** In truth, strictly viewed, this whole discussion was unnecessary to the holding, since the underlying assumption seemed to be that the departure at the brisk rate was meaningless if Smith did not in fact know that the men who had just arrived were police officers. The major focus of the disagreement between the majority and the dissent was whether the police officers could reasonably think that Smith knew of their presence.

**6.** I do not here inquire into any issues about the formulation or application of this particular test.

a departure instigated by the arrival of the police may be considered *at all* is further brought into question by the recent Supreme Court decision of *California v. Hodari D.,* —— U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). There two police officers in an unmarked car[7] came upon a group of youths who immediately took flight and were chased by the officers. The state had conceded that the officers did not have the requisite "reasonable suspicion" required for a *Terry* stop. Commented the Supreme Court: "That it would be unreasonable to stop, for brief inquiry, young men who scatter in panic upon the mere sighting of the police is not self-evident, and arguably contradicts proverbial common sense. See Proverbs 28:1 (The wicked flee when no man pursueth.)" While the Court found no need to decide the point, the skepticism expressed for a seven-judge majority where no basis whatever existed for a *Terry* stop other than the flight itself suggests that a less-compelling manner of departure might be permissibly taken into account along with other relevant factors in determining the justification for a *Terry* stop.

---

**7.** The officers were in street clothes, but wore jackets with "Police" embossed on both front and back.