**Kim HOLSTON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 89–CF–1275.

District of Columbia Court of Appeals.

Submitted March 12, 1991.
Decided Nov. 15, 1993.

---

13. The prosecutor made no such argument here.

Joseph H. Green, Jr., Washington, DC, was on the brief for appellant.

Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Thomas C. Black, Barbara A. Grewe, and David A. Payne, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and WAGNER, Associate Judges.

WAGNER, Associate Judge:

Appellant, Kim Holston, was found guilty by a jury of one count of unlawful possession with intent to distribute a controlled substance (cocaine), in violation of D.C.Code § 33-541(a)(1) (1988). On appeal, he argues that the trial court erred in denying his motion to suppress physical evidence (drugs and cash) which the police seized from the trunk of a car to which appellant had keys. Appellant contends that the warrantless search of the trunk was unlawful because it was: (1) based on an unreliable anonymous tip; (2) exceeded the scope of any search allowed by a *Terry* stop;[1] and (3) not incident to a lawful arrest or based on independent grounds for probable cause. We hold that although the police lawfully stopped appellant under *Terry* principles, the warrantless search of the automobile trunk violated appellant's Fourth Amendment rights. Accordingly, we reverse.

## I.

Lieutenant Don Pope of the Metropolitan Police Department was the only witness at the suppression hearing. He testified that at approximately 4:45 p.m. on the afternoon of July 30, 1988, while on patrol with Officer Ann Scott, he monitored a radio dispatch for two scout cars to investigate an anonymous tip about a man with a gun reported to be holding a woman at bay in the 4400 block of Pond Street, N.E. behind a bronze BMW for which the dispatcher provided the license plate number. According to Lt. Pope, the information was called into the communications center by a concerned citizen. Lt. Pope thought, but was not sure, that the dispatcher also said the gunman was a Black male. He recalled no physical or clothing description given for the man or the woman. Lt. Pope was the first officer to arrive on the scene, fifteen seconds after the broadcast.

Lt. Pope spotted appellant standing behind a BMW which matched in all respects the description of the car given in the radio run, including the tag number. Appellant was leaning into the trunk of the car as if putting something in or taking something out. Appellant was the only person the lieutenant saw in the area at the time. Appellant glanced back and saw the marked police car approaching. Lt. Pope saw appellant's eyes widen before appellant slammed the trunk shut and started walking away.[2] Lt. Pope thought that appellant was probably the man described in the radio run. Therefore, Lt. Pope stopped his car, got out with his gun drawn, and stopped and frisked appellant. Lt. Pope found no weapon on appellant, and he asked appellant to whom the BMW belonged. Appellant responded that it was his uncle's car. The police looked around for the woman involved, but they could not locate her. Lt. Pope then took the car keys from appellant's pocket because he thought he had reason to believe that appellant might have placed the gun in the trunk of the car.

When Lt. Pope opened the trunk, he saw several packets of what appeared to be cocaine lying around a large black leather pouch out of which were bulging plastic containers of white powder commonly used to package cocaine. The police seized from the car trunk seventy packets of cocaine and a large sum of money. At no time up to and during the search of the trunk did Lt. Pope tell appellant that he was under arrest; however, he testified that appellant was not free to leave. Later in testimony, Lt. Pope recounted that at the time he approached appellant with his gun drawn, he saw a "female in the general area, except that she was not by the car." The lieutenant estimated that she was "20 or 30 yards in front of the car." Only after Lt. Pope opened the trunk did a female come near the car.[3]

The trial court credited Lt. Pope's testimony and made factual findings consistent with

1. See *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. Officer Ann Scott, Lt. Pope's partner that day, testified that appellant looked surprised when they walked toward him with their guns drawn.

3. The evidence at trial was essentially consistent with the events as related at the suppression hearing.

it. Significantly, the trial court found as fact that "[n]owhere in the general vicinity was anything that appeared to be a woman who had been held at bay with a gun." The court concluded that Lt. Pope's observation of a man standing near a car of the same color, make, and tag number of the car described in the broadcast combined with appellant's suspicious reaction upon seeing the police car provided reasonable articulable suspicion for the police to investigate further, including taking appellant's keys and opening the trunk of the car. The court noted that had it not been for the particularized description of the car, there may have been an insufficient basis for Lt. Pope to seize the keys from appellant. Finally, the court concluded that once the police saw the drugs in plain view, they had probable cause to arrest appellant and that any evidence not in plain view was lawfully seized as a result thereof. For these reasons, the trial court denied the motion to suppress.

Appellant argues that the police lacked the requisite articulable suspicion to conduct a *Terry* stop because the anonymous tip was unreliable and uncorroborated in important details. Alternatively, appellant argues that his initial detention was in fact a warrantless arrest without probable cause. Specifically, appellant contends that the citizen who reported the crime was not identified and that the description of the person reportedly holding the woman at bay with a gun was too general. Appellant also argues that the search of the trunk was beyond the scope of a *Terry* based search for weapons because it was motivated solely by a search for illegal drugs. It is the government's position that the anonymous tip was sufficiently corroborated to justify a *Terry* stop by the police lieutenant's on-the-scene observations. The government further contends that the seizure of appellant's keys and subsequent search of the trunk were lawful based either on concern for police safety during the *Terry* stop[4] or on probable cause under the automobile exception to the warrant requirement.

## II.

We consider first whether the trial court correctly ruled that the trunk search was justified as part of an otherwise valid *Terry* stop. Preliminarily, we hold that the trial court did not err in concluding that the initial stop was justified under *Terry* principles. It is well established, at least since the Supreme Court's decision in *Terry*, that the police may stop and briefly detain a person for further investigation without probable cause to arrest provided they have an articulable suspicion based on specific facts and reasonable inferences that the individual is engaged in criminal conduct. *Peay v. United States*, 597 A.2d 1318, 1319–20 (D.C.1991) (en banc); *Brown v. United States*, 590 A.2d 1008, 1013 (D.C.1991). The "'minimal level of objective justification'" required "is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); *Peay*, 597 A.2d at 1320; *Gomez v. United States*, 597 A.2d 884, 889 (D.C.1991). When the circumstances warrant, the police may frisk the suspect or conduct a limited search for weapons of areas within the reach of the suspect for the protection of the officers. *United States v. Johnson*, 540 A.2d 1090, 1094–95 (D.C.1988); *United States v. Mason*, 450 A.2d 464, 466 (D.C.1982). The requisite articulable suspicion for the stop can be furnished by an anonymous tip, and the police may stop a suspect after promptly corroborating innocent details of the tip without first observing illegal conduct. *Johnson*, 540 A.2d at 1094; *see also Gomez*, 597 A.2d at 891 n. 17.

In *Johnson*, we found that the police detective had an articulable suspicion for a *Terry* stop where he learned through an anonymous tip that unidentified suspects were selling weapons out of an orange Volkswagen at a specific location. We concluded that the tip was sufficiently corroborated when police spotted the car within fifteen seconds after the broadcast at the reported location. *Johnson, supra,* 540 A.2d at 1091–

---

4. The government does not argue that the search was justifiable as one incident to a lawful arrest. *See United States v. Ross*, 456 U.S. 798, 102 S.Ct.

2157, 72 L.Ed.2d 572 (1982); *West v. United States*, 604 A.2d 422 (D.C.1992).

92. The reliability of the information in the tip was "established as soon as the police arrived on the scene and found that the innocent details of the tip were corroborated." *Id.* at 1094. We observed in *Johnson* that the fact that a tip involves weapons may be considered in assessing the reasonableness of the police officer's conduct. *Id.* at 1091–92. In *Johnson,* we reversed the trial court's grant of the motion to suppress, concluding that the stop and subsequent protective search for weapons in the passenger compartment and containers in the suspect's car were justified after a frisk during which no weapons were found. *Id.* at 1094–95. In upholding the scope of the *Terry*-based intrusion to include the passenger compartment and any closed containers which could likely contain a weapon, we relied on *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), and prior decisions of this court. *Johnson,* 540 A.2d at 1094–95. In *Long,* the Supreme Court held that:

> the search of the passenger compartment of·the automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

463 U.S. at 1049, 103 S.Ct. at 3481 (quoting *Terry, supra* note 1, 392 U.S. at 21, 88 S.Ct. at 1880).

In *Gomez,* we also upheld a *Terry* stop initiated as the result of an anonymous tip which merely conveyed that unidentified persons were dealing drugs out of a vehicle in a certain alley in the District late on a December night. *Gomez, supra,* 597 A.2d at 889, 891–92. Among the factors in *Gomez* providing "significant corroboration" of the anonymous tip were the brief time lapse between the tip and the police officer's arrival at the location (four minutes), the presence of two cars side by side in the dark alley, the lateness of the hour, and the officers' knowledge that the area was a known high drug area. *Id.* at 889.

Similarly, in this case there was sufficient corroboration of the tip to provide Lt. Pope with the " 'minimal level of objective justification,' in the context of [the] anonymous tip . . . [to] warrant a brief detention of [appellant] so that the police could investigate further." *See Gomez, supra,* 597 A.2d at 890 (quoting *Sokolow, supra,* 490 U.S. at 7, 109 S.Ct. at 1585). Here the tip provided more specific details than were present in *Gomez,* including the sex, and possibly the race, of the suspect and the make, color and license plate number of the automobile near which the suspect was reported to be located. As in *Johnson,* the tip included a report that the suspect was armed, a circumstance which supports the reasonableness of the initial stop and pat-down. 540 A.2d at 1091–92. Lt. Pope arrived at the location of the reported crime within fifteen seconds of the radio run and observed a man bending over into the trunk of an automobile which matched precisely the description given. *See Gomez,* 597 A.2d at 890 (officers' arrival on scene immediately after radio run a consideration in determining articulable suspicion).

When the police arrived, appellant, who appeared to be putting something in the trunk, reacted with a startled look, slammed the trunk down and walked away. These actions must also be factored into the totality of circumstances in assessing the reasonableness of the police officer's conduct. *See Brown, supra,* 590 A.2d at 1020 ("where a suspect reacts in an unusual way to police investigation short of detention, this may properly be included in the calculus" in determining probable cause or articulable suspicion). In *Brown,* we concluded that Brown's "attempt to exercise his right not to participate in an encounter with [the police]" was not of sufficient consequence to bolster significantly a showing of probable cause or articulable suspicion on the particular facts of the case. 590 A.2d at 1019–20. However, we acknowledged in *Brown* that the suspect's reaction may have some significance. *Id.* In *Cauthen v. United States,* 592 A.2d 1021 (D.C.1991), we recognized that "independent police observation of suspicious conduct can offer confirmatory support for a tip that oth-

erwise would be inadequate." *Id.* at 1024.[5] We are satisfied that the appellant's retreat, coupled with his facial expression and act of slamming the trunk, are factors of significance in assessing the reasonableness of the officer's actions in this case. All of these considerations lead us to conclude that the trial court properly found that the initial *Terry* stop and pat-down of appellant were justified and did not violate appellant's rights.[6]

## III.

Whether the police could properly search the trunk of the vehicle as a part of an otherwise valid *Terry* stop and whether the trunk search was justified on any other grounds present more difficult questions.[7] On appeal, the government contends that the search of the trunk was supported by probable cause. Alternatively, the government argues that sufficient exigent circumstances existed to justify a warrantless search of the trunk based on less than probable cause. We consider first whether the search was justified absent a basis for finding probable cause.

## A.

It is the government's position that the search was justified based on the exigent danger to the officers and the public attendant to the presence of weapons. We understand the government's argument to be no more than that Lt. Pope carried out a valid contemporaneous search of the trunk of the car as part of a valid *Terry* stop. The government relies on *Mason* and *United States v. McClinnhan,* 212 U.S.App.D.C. 368, 660

F.2d 500 (1981). These cases apply traditional Fourth Amendment considerations of reasonableness within the *Terry* line of cases. They recognize that the exigency of the immediate need to protect the officers or the community may justify a limited search for weapons based on less than probable cause. *See Mason, supra,* 450 A.2d at 466; *see also McClinnhan,* 212 U.S.App.D.C. at 371, 660 F.2d at 503.

*Mason* involved an anonymous tip that a man standing on a street corner was carrying a gun in his tote bag. 450 A.2d at 465. *McClinnhan* involved a report that the suspect, for whom a general physical description and specific clothing description were given, was walking down a certain street with a sawed-off shotgun in a black briefcase. 212 U.S.App.D.C. at 369, 660 F.2d at 501. Neither *Mason* or *McClinnhan* supports the government's argument that concern for police safety justified the search under the circumstances presented here. In both cases, appellants were holding the containers which the tipster said held a weapon, and the containers remained within reach of the suspects until the officers seized them. Here, appellant was already walking away from a parked automobile when Lt. Pope stopped him. There was no evidence or factual finding that the officers anticipated, or that appellant's actions indicated, appellant's intention or effort to return to the car trunk and retrieve a weapon. *See United States v. Wilkerson,* 194 U.S.App.D.C. 393, 397, 598 F.2d 621, 625 (1978).

The scope of a weapons frisk where a valid *Terry* stop has been made is " 'strictly

5. The *Cauthen* court noted, however, that this court's decision in *Smith v. United States,* 558 A.2d 312, 319 (D.C.1989) requires that flight in response to a show of authority be in such a manner that "a guilty conscience is the most reasonable explanation." *Cauthen, supra,* 592 A.2d at 1024 (quoting *Smith,* 558 A.2d at 319).

6. The fact that the police were unable to corroborate all details of the broadcast (*e.g.,* the presence of the victim) does not alter the result. *See Alabama v. White,* 496 U.S. 325, 330–32, 110 S.Ct. 2412, 2416–17, 110 L.Ed.2d 301 (1990) (partially corroborated anonymous tip provided the requisite reasonable suspicion for a *Terry* stop); *see also Groves v. United States,* 504 A.2d

602, 603 n. 3 (D.C.1986) (articulable suspicion found on totality of circumstances, though information about make of automobile and number of persons involved in anonymous tip were incorrect); *see also Johnson, supra,* 540 A.2d at 1092 (innocent circumstances in anonymous tip involving gun-selling out of a car corroborated immediately even though no gun observed).

7. At the suppression hearing, the government argued, *inter alia,* that the case fell within the automobile exception to the warrant requirement citing *Ross,* and alternatively, that it fell within the facts of *Johnson,* where we upheld the denial of a suppression motion.

circumscribed by the exigencies which justi-fi[ed] its initiation.'" *Long, supra,* 463 U.S. at 1051, 103 S.Ct. at 3481 (quoting *Terry, supra,* 392 U.S. at 26, 88 S.Ct. at 1882). The weapons search must be limited in scope to protect the officer. *Id.,* 463 U.S. at 1049–50 n. 14, 103 S.Ct. at 3481 n. 14; *McClinnhan, supra,* 212 U.S.App.D.C. at 371, 660 F.2d at 503. On the particular facts of this case, the search exceeded those limits. We do not agree that the exigent circumstances of pro-tecting the police from whatever was in the trunk existed where the subject of the *Terry* stop had already walked away from the vehi-cle and the police when he was stopped.[8] The fact that the subject might gain access to the locked trunk or drive the car away once the police left does not present exigent cir-cumstances similar to those in *Mason* and *McClinnhan.*

Nor does the D.C. Circuit's opinion in *Wilkerson,* cited by both parties, support the government's position. *See* 194 U.S.App. D.C. at 397, 598 F.2d at 625. In *Wilkerson,* police searched a coat in plain view on the front seat of a car lawfully stopped for a traffic violation *before* they arrested or pat-ted down the car's occupants. While police awaited the results of a check on the vehicle's ownership, however, they noticed the driver's bizarre behavior which led them to believe reasonably that some sort of criminal activity was afoot. Therefore, the *Wilkerson* court held that by the time one of the officers patted down the coat, which was in plain view, and found a gun under it, the police had the requisite probable cause to search the *passenger* compartment of the car. *Id.,* 598 F.2d at 625. In this case, unlike *Wilkerson,* the police learned nothing new during their stop of appellant except that he was not carrying a gun. For all the foregoing rea-sons, we reject the government's argument that the search of the trunk falls within the exigent danger exception as defined by appli-cable case law.

**B.**

The government also relies on *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and the series of cases following it to support its probable cause argument. These cases involve the automo-bile exception to the warrant requirement. However, "the exception to the warrant re-quirement established in *Carroll* ... applies only to searches of vehicles that are sup-ported by probable cause." *Ross, supra* note 4, 456 U.S. at 809, 102 S.Ct. at 2164.[9] In *Ross,* the Supreme Court held that

8. Recently, this court held constitutionally inval-id the search of the glove compartment of an arrestee's vehicle after he had "parked, locked, and walked fifteen to twenty feet away from [the] automobile before being stopped and arrested" for a traffic offense. *Lewis v. United States,* 632 A.2d 383, 384, 384–385, 388 (D.C.1993). This court concluded that the search exceeded the permissible limits established by the "bright-line" test set forth in *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and was not valid under the principles set forth in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). *Lewis,* 632 A.2d at 388. *Belton* established a bright-line rule allow-ing the police to search the passenger compart-ment of a vehicle as a contemporaneous incident to a lawful arrest. 453 U.S. at 460, 101 S.Ct. at 2864. *Chimel* held that the police, in making a lawful arrest, can search the "area within [the arrestee's] immediate control" from which the person may grab a weapon or evidence, the same to be determined on a case-by-case basis. 395 U.S. at 762–63, 89 S.Ct. at 2039–40. The scope of a search under *Terry* principles, where proba-ble cause has not been established for an arrest, can be no broader. Our decision in *Lewis* pro-vides additional support for the conclusion that

the search of appellant's locked vehicle after he was confronted by the police some distance away was invalid. *See* 632 A.2d at 388; *see also Unit-ed States v. Fafowora,* 275 U.S.App.D.C. 141, 142–43, 865 F.2d 360, 361–62, *cert. denied,* 493 U.S. 829, 110 S.Ct. 98, 107 L.Ed.2d 62 (1989).

9. In *Carroll,* federal agents obtained evidence that George Carroll and John Kiro were bootleg-gers who traveled between Grand Rapids and Detroit in an Oldsmobile Roadster. Three months before the stop and search of the vehicle which led to their arrest, Carroll and Kiro met the agents in Grand Rapids and agreed to sell them illegal whiskey, but the deal fell through. A month later, the agents spotted the two in the vehicle on the route to Detroit, which was known as a point of entry into the country for illegal liquor, but the agents abandoned the chase. Two months later, the agents unexpectedly encoun-tered the pair, stopped them and upon feeling an unusually hard upholstered back of the "lazy-back" seat, opened the seat cushion and discov-ered illegal liquor. 267 U.S. at 174, 45 S.Ct. at 292. Satisfied that the search was made upon probable cause reasonably arising out of circum-stances known to the seizing officer that the

the scope of a warrantless search authorized by [the automobile] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

*Id.* at 825, 102 S.Ct. at 2173. The Supreme Court upheld in *Ross* the warrantless search of containers in the trunk of an automobile which the police had searched incident to a lawful arrest.

Ross' arrest occurred after the police received information from a proven reliable informer that he had witnessed a person known as "Bandit," for whom he gave a detailed description, selling drugs from the trunk of a car, also described with particularity, at a specific address. *Ross, supra* note 4, 456 U.S. at 800, 102 S.Ct. at 2160. The tipster also told the police that Bandit had additional narcotics in the trunk. *Id.* The police ascertained that the car was registered to Ross, who used the nickname "Bandit." The officers saw Ross, who matched the description, driving the vehicle near the address given by the informant, and stopped the car. They asked him to step out and discovered a bullet on the car's front seat. The officers searched the glove compartment, found a gun, and arrested Ross. Only then did the detective take Ross' keys, open the trunk of the car, and find narcotics in a closed bag. The police also thoroughly searched the car at the police station and found in the trunk a pouch containing a large amount of cash. In upholding the search, the court defined the allowable scope of the search, not by the nature of the container in which contraband was hidden, but rather by the object of the search and the places where there is probable cause to believe the contraband will be found. *Id.* at 824, 102 S.Ct. at 2172. In contrast, in the case before this court, probable cause never arose.

■■■ *Carroll* and the cases following it establish that the police may conduct a warrantless search of any part of a lawfully stopped vehicle, including its trunk provided that (1) they have probable cause to believe that it contains contraband or other evidence subject to seizure and (2) exigent circumstances require search and seizure. *Ross, supra* note 4, 456 U.S. at 825, 102 S.Ct. at 2173; *see Cady v. Dombrowski,* 413 U.S. 433, 448, 93 S.Ct. 2523, 2531, 37 L.Ed.2d 706 (1973); *see also Galloway v. United States,* 326 A.2d 803, 805 (D.C.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). The probable cause determination must be based on facts that would justify the issuance of a warrant, not merely upon the subjective good faith of the officer. *Ross,* 456 U.S. at 808, 102 S.Ct. at 2164. In the context of issuance of a warrant, the Supreme Court has defined probable cause as " 'a fair probability that contraband or evidence of a crime [would] be in a particular place.' " *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1982). Of course, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232, 103 S.Ct. at 2329.

■■■ The facts here are distinguishable from those in *Johnson, Ross,* and *Carroll* in various important respects which render a probable cause finding unsupportable. Here, the tip provided no specific description of the person accused of illegal behavior. While our case law holds that this is not dispositive for purposes of *Terry* stops, probable cause requires more than is required for a finding of articulable suspicion. *See White, supra* note 6, 496 U.S. at 330, 110 S.Ct. at 2416. There was no information from the tipster that the vehicle itself contained contraband or that the vehicle was even associated with the suspect except to position him and his victim in proximity to the particular vehicle. There was no report that the suspect owned, drove, or had been in the car at any time. In contrast, in *Carroll,* the two suspects were reported to be carrying the contraband across state lines in a specific vehicle, and

---

automobile contained contraband, the court found the seizure to be lawful, recognizing the reasonableness of the immediate warrantless search of a vehicle for contraband. *Id.* at 162, 45 S.Ct. at 288.

the search was based on probable cause that the car actually contained the contraband. 267 U.S. at 162, 45 S.Ct. at 288. The scope of the search in *Carroll* was no greater than a magistrate could have authorized upon issuance of a warrant. *Ross, supra* note 4, 456 U.S. at 818, 102 S.Ct. at 2169. In *Ross*, the reliable informant reported that Ross had just sold drugs from the trunk of his car and told the informant that he had other drugs stored there. 456 U.S. at 800, 102 S.Ct. at 2160. On these facts, the *Ross* court found probable cause to search the trunk. *Id.* at 824, 102 S.Ct. at 2172. In *Johnson*, the informant reported that a man was sitting in an orange Volkswagen out of which he was selling handguns. 540 A.2d at 1090. In this case, there was no report from the anonymous tipster that the man with the gun was connected in such a way to the car. Nor was any physical or clothing description given for appellant which would identify him sufficiently as the man with the gun to support a probable cause determination.

Nevertheless, the government argues that two facts within the officer's knowledge, along with the other circumstances, provided probable cause to search the trunk here. First, the trial court found from the evidence that appellant was startled when he saw the police and slammed the car trunk down and walked away. Second, appellant told Lt. Pope that the car belonged to his uncle, which the government argues could reasonably lead the officer to believe that appellant was trying to disassociate himself from the car because it held contraband. The first factor, closing the trunk and walking away, was not sufficient to establish probable cause. The government seeks to take too broad a leap in suggesting that the logical inference from appellant's disclosure that his uncle owned the car in response to police questioning was concealment. It may very well have been simply a truthful response. As appellant well knew, the police had already seen him access the trunk of the car. We do not regard these circumstances as providing the police with probable cause to arrest appellant. It follows that they do not provide a separate basis for probable cause to search the trunk under the automobile exception. *See Ross, supra* note 4, 456 U.S. at 825, 102 S.Ct. at 2173.

■ What the police learned after alighting from their car to investigate was that the appellant, who was leaning into the trunk of the car, did not possess a weapon which, according to the anonymous tipster, the man involved in the incident possessed. The tipster provided no description for the man, except perhaps that he was Black, and he was standing behind the car. *See Brown, supra*, 590 A.2d at 1017 ("Descriptions applicable to large numbers of people will not support a finding of probable cause.") The trial court made a specific finding that the police did not see in the general vicinity the woman who was alleged to have been held at bay with a gun.[10] Considering the totality of circumstances here, we conclude that while the police had articulable suspicion to stop to investigate, they could not meet the higher standard required for probable cause to search the trunk.

Although the Supreme Court recognized in *Ross* that it had upheld warrantless searches of automobile trunks on less than probable cause,[11] the cases cited by the court involve situations where the government had lawful

---

10. We are bound by the trial court's factual findings unless clearly erroneous or not supported by substantial evidence. *Lawrence v. United States*, 566 A.2d 57, 60 (D.C.1989); *see also Brown, supra*, 590 A.2d at 1020. The trial court's finding on the issue is adequately supported; therefore, it must be accorded deference. *See Brown*, 590 A.2d at 1020.

11. The Court in *Ross* stated:
   [w]arrantless searches of automobiles have been upheld in a variety of factual contexts quite different from that presented in *Carroll*. *Cf. Cooper v. California*, 386 U.S. 58 [87 S.Ct. 788, 17 L.Ed.2d 730 (1967)]; *Cady v. Dom-*

*browski*, 413 U.S. 433 [93 S.Ct. 2523]; *South Dakota v. Opperman*, 428 U.S. 364 [96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)]. Many of these searches do not require a showing of probable cause ... We are not called upon to—and do not—consider in this case the scope of the warrantless search that is permitted in those cases.

456 U.S. at 809 n. 11, 102 S.Ct. at 2165 n. 11; *see also United States v. Johns*, 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985); *Spinner v. United States*, 618 A.2d 176, 179 (D.C. 1992).

custody of the automobile before the challenged search took place. In *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the police found incriminating evidence in the glove compartment of a car seized for impoundment following its owner's arrest on narcotics charges. The police were holding the car pending forfeiture proceedings pursuant to a California statute. *Id.* at 61, 87 S.Ct. at 790. The court held:

> It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time had no right, even for their own protection to search it. It is no answer to say that the police could have obtained a search warrant, for "[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable."

*Id.* at 61–62, 87 S.Ct. at 791; *United States v. Rabinowitz*, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653 (1950).

In *Cady*, the Supreme Court upheld a search of a disabled automobile that police had towed to a garage after the driver was arrested for drunk driving and hospitalized. 413 U.S. at 436, 93 S.Ct. at 2525. The search was conducted pursuant to standard police department procedure. The police sought to retrieve a gun which they reasonably believed to be in the trunk of the vehicle in order to protect the public from the possibility the gun would fall into the wrong hands. *Id.* at 443, 93 S.Ct. at 2529.[12] The court found that the search was reasonable within the meaning of the Fourth and Fourteenth Amendments. *Id.* at 448, 93 S.Ct. at 2531. In *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the Court upheld as reasonable a routine inventory search by the police of an automobile lawfully impounded for multiple parking violations. *Id.* at 375–76, 96 S.Ct. at 3100–01.

This case does not fall within any of the categories involved in the foregoing cases. The search of the trunk of the car was not shown to be reasonably connected with the

gun incident which prompted the police to investigate. Nor was the search conducted pursuant to any routine inventory search. Further, it did not occur following or incident to an arrest. Therefore, we are not persuaded that this line of cases supports the government's contention that Lt. Pope possessed any valid grounds for the search based on them.

## IV.

The police search of the trunk was not justifiable under any recognized exceptions to the warrant requirement. Accordingly, we conclude that the trial court erred in denying the motion to suppress. Therefore, we reverse and remand for a new trial.

*Reversed and remanded.*

TERRY, Associate Judge, dissenting:

With all respect, I cannot join in the court's opinion. Considering all the circumstances, I think the police were justified in going into the trunk of the car. Four facts lead me to this conclusion: (1) the extremely short interval—fifteen seconds—between the radio broadcast and the arrival of Lieutenant Pope; (2) the precise match, including the exact license number, between the broadcast description of the car and the car that appellant was standing next to (there can be no doubt whatever that this was the very same car mentioned in the broadcast); (3) the fact that appellant, when he saw the police, "reacted with a startled look, slammed the trunk down and walked away," *ante* at 382; and, most importantly, (4) the fact that a gun was involved.

On this record I think the police had at least an articulable suspicion that the gun was in the trunk. Indeed, in light of *Galloway v. United States*, 326 A.2d 803 (D.C. 1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975), I might be inclined to say they had probable cause. But even assuming that the facts do not quite add up to probable cause, I think there was

12. Dombrowski had informed the police officers that he was a Chicago policeman, and members of that police department were required to carry their weapons at all times. *Cady, supra,* 413 U.S. at 436, 93 S.Ct. at 2525. For that reason the police thought that the weapon was in the car, since they had not located it.

enough to justify a limited search of the car under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See United States v. Thomas,* 314 A.2d 464 (D.C.1974); *United States v. Green,* 151 U.S.App.D.C. 35, 465 F.2d 620 (1972).[1]

I also find it difficult to distinguish this case from *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), in which the Supreme Court sustained the warrantless search of a car trunk for a gun because of the police "concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle." *Id.* at 447, 93 S.Ct. at 2531. Because the trunk, "which the officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals," the Court held "that the search was not 'unreasonable' within the meaning of the Fourth and Fourteenth Amendments." *Id.* at 448, 93 S.Ct. at 2531. Indeed, the facts in this case are probably stronger than in *Cady,* since the police here had greater reason to believe the gun was in the trunk than they did in *Cady. See also Sturdivant v. United States,* 551 A.2d 1338, 1342 (D.C.1988) ("the presence of [firearms] creates a special exigency because of their potential threat to human life"), *cert. denied,* 493 U.S. 956, 110 S.Ct. 370, 107 L.Ed.2d 356 (1989); *United States v. Allison,* 205 U.S.App.D.C. 270, 272, 639 F.2d 792, 794 (1980) ("The presence of the gun made the situation more pressing and the emergency more critical").

Since my colleagues view the case differently, I respectfully dissent.

---

1. Both *Thomas* and *Green* applied *Terry* principles in upholding a limited search (more like a "frisk") of a car.